361 P.2d 544

**Frances Fern HATFIELD, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona, and Ciruli Brothers, Respondents.**

**No. 7126.**

Supreme Court of Arizona.

May 3, 1961.

Engler & Hertzberg and Jeremy Butler, Phoenix, for petitioner.

Frances M. Long, Phoenix, for respondent Industrial Commission, Donald J. Morgan, James D. Lester, Edward E. Davis and C. E. Singer, Jr., Phoenix, of counsel.

JENNINGS, Justice.

This cause comes before the Court through a writ of certiorari to review an Industrial Commission award reaffirming a previous award wherein the petitioner was awarded sums of money and accident benefits for temporary disability due to a personal injury arising out of and in the course of her employment. Petitioner (Mrs. Frances Fern Hatfield) fell down a flight of stairs while working as a carrot packer for respondent employer. The accident occurred January 28, 1958, and petitioner was taken to the hospital.

At that time her injuries were described as (1) contusion and subluxation of lower cervical vertebrae with contusion of brachial plexus, and (2) contusion of left hip and back. Petitioner has sustained pain and discomfort from the day of the accident. Petitioner's claim was accepted by the Industrial Commission February 19, 1958, and she was sent to doctors for examination and treatment. One of the doctors (Alvin L. Swenson) indicated that at least until April 30, 1958, he thought petitioner's physical injuries were the source of her disability. On that date Doctor Swenson recommended that petitioner be examined by three doctors in consultation. As a result the doctors agreed (May 26, 1958) that petitioner should be able to return to light work immediately and her regular work in four weeks.

The Commission ordered petitioner back to work in its findings and order dated June 6, 1958. This action however was suspended July 1, 1958, when petitioner was hospitalized because of crippling pains in the back, legs and neck. While petitioner was in the hospital she was examined by a specialist in neuropsychiatry who made the following diagnosis in a report dated July 24, 1958:

"Comment:

"'The neurologic examination is negative. The aches and pains are widespread and not accompanied by any objective findings. The symptoms

are essentially unchanged since January or February, 1958, despite various treatments and encouragements.' "

" 'It is, in my opinion, a conversion hysteria. For internal and environmental reasons, this patient may unconsciously have needed and sought the cared-for role, possible and permissible only in the present circumstances.' "

In the next few months, the petitioner saw several doctors, and September 22, 1958, another consultation board, noting that there was no objective evidence of disability, said that the recommendations of a psychiatrist (Dr. McGrath) were reasonable and suggested that the petitioner be returned to her regular work.

A third consultation board examined petitioner December, 1958, found no permanent disability, and recommended cessation of treatment and examination. Petitioner was discharged by Dr. Swenson December 8, 1958, and one week later, December 15, 1958, the Commission announced its findings and award, the following excerpts of which are important:

"Findings

"1. That the above-named applicant (petitioner) on January 28, 1958 sustained a personal injury by accident arising out of and in the course of his (sic) employment.

\*　　\*　　\*　　\*　　\*　　\*

"3. That said personal injury entitled said applicant to accident benefits (medical) until December 8, 1958.

\*　　\*　　\*　　\*　　\*　　\*

"7. That the medical evidence reflects that said applicant has no physical disability resulting from said accident."

"Award

"Award is hereby made payable to said applicant by the above-named defendant insurance carrier, as follows:

"1. Accidents Benefits.

"2. The sum of $601.89, all of which has been paid."

No mention is made in the award of petitioner's mental illness or the shortness of her right leg as testified to by Dr. James K. Martin. December 8, 1958, while suffering pain, petitioner went to the office of Dr. Swenson in an ambulance. Dr. Swenson recommended to the Commission that petitioner see Dr. McGrath again. After seeing petitioner on February 14, 1959, he (Dr. McGrath) wrote as follows:

"There is nothing in today's examination to alter my impression of 7/24/58. The patient has hysteria; has convinced herself that she has multiple and disabling residuals of the accident of 1/28/58. None are substantiated in physical examination.

There seems to be no real basis on which to reopen her case. The circumstances of the accident do not suggest a traumatic neurosis. Treatment for her hysteria does not appear to be indicated as an industrial responsibility, since I do not believe that the accident caused the emotional conflicts which underlie the neurosis."

After the Commission's award of temporary disability of December 15, 1958, petitioner made a timely request for rehearing and pursuant to the request a hearing was had March 28, 1960. At the hearing petitioner called three witnesses who testified that petitioner had been in good health for most of her life and had done very heavy work up to the time of the accident. Doctor Swenson also testified to the facts which appeared in his reports including the statement that petitioner's pains were originally the result of her injury.

Dr. James K. Martin who had previously examined petitioner at her own expense, informed the Commission that through the use of x-rays taken of the petitioner while she was standing, he had found a posture imbalance, i. e., a shortness of the right leg. He further stated that the fall down the stairs could have produced the shortness of the leg and that the shortness was responsible for pains in her back and legs. He prescribed a heel lift which had been effective in easing petitioner's pain and physical difficulties. He found some objective indications of pain and symptoms of fibromyocitis.

In her testimony petitioner asked that she be permitted to continue receiving treatments with Dr. Martin and that she be examined by another psychiatrist. These requests were denied and the earlier award of temporary disability was reaffirmed without making any specific findings about the cause or disabling effect of the conversion hysteria, or the posture imbalance.

Petitioner brings three assignments of error: (1) failure of the Commission to make findings of fact on the pertinent issues of the case and that such findings as were made were vague, ambiguous and indefinite, (2) failure of the Commission to find that petitioner was disabled and had suffered loss of earning capacity from injuries received from an accident arising out of and in the course of her employment, and that such failure was contrary to the law and the evidence, and (3) failure to find that petitioner should be given further medical treatment for existing injuries which resulted in the inability of the petitioner to return to a gainful occupation.

Findings of administrative agencies must be explicit to make it possible for the court to make an intelligent review and to determine whether the facts as found provide a reasonable basis for the decision. The findings must be sufficiently definite and certain to permit a judicial interpreta-

tion. Wammack v. Industrial Commission of Arizona, 83 Ariz. 321, 320 P.2d 950. An award should be set aside if the findings lack precision and are too indefinite to aid the courts in reviewing the award. De Vore v. Maidt Plastering Co., 205 Okl. 612, 239 P.2d 520.

 Certainly one of the prime issues in the determination of this award was whether the petitioner's accident and injury were the proximate cause of her mental illness. However, we find no mention of psychoneurosis in the Findings and Award of December 15, 1958, nor do we find mention of same in the reaffirmation of that award in March, 1960.

The only finding that could possibly allude to this issue was the statement, "That the medical evidence reflects that said applicant has no physical disability from said accident." With respect to the status of the psychoneurosis this statement is neither specific nor is it precise. The use of the word "physical" might indicate that the Commission gave no thought whatsoever to the mental illness. The statement could also imply many other meanings on which this Court will not take the time to speculate. We have examined the record and we are unable to conclude with certainty whether the conversion hysteria was first manifested from the time of the accident. Further medical testimony should be directed to this point.

Suffice it to say that the findings are too indefinite and the award is set aside.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.