433 P.2d 32

Betty Hult McKAY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Betty Hult Shops, Inc., Respondents.

No. 1 CA–IC 148.

Court of Appeals of Arizona.

Oct. 30, 1967.

Rehearing Denied Dec. 4, 1967.

Review Granted Jan. 16, 1968.

**382**

---

Robertson & Fickett, by David C. Bury, Tucson, for petitioner.

Robert K. Park, Chief Counsel, Phoenix, by Spencer K. Johnston, Tucson, for respondents.

STEVENS, Judge.

The Workmen's Compensation matter now under consideration involves the application of "the going and coming rule".

Betty Hult McKay, wife of Roy McKay, was the President and principal stockholder of the employer corporation, Betty Hult Shops, Inc. Her daughter Ann Hult was an officer of the corporation and together Mrs. McKay and her daughter were the principal employees of the employer corporation. The place of business of the corporation was in Tucson. Mrs. McKay and her daughter lived together in a home in Tucson approximately 15 miles from the corporate place of business. Each owned and drove her own car. Mr. McKay lived in Wickenburg approximately 178 highway miles from Tucson, where he operated his own business. At the time in question, they had been married approximately 5 years and there is no hint in the record of any discord between them. Neither held an interest in the business of the other and neither contributed to the income of the other. Mr. McKay had free access to the Tucson home but he had no access to the corporate place of business. The accident in question occurred at about 6:30 p. m. on Saturday, 31 October 1964.

At one time the corporation operated two retail outlets and the corporation purchased a cash register from Mr. McKay for the sum of $100 for use in connection with one of the outlets. Prior to and on the day in question, the corporation had a single business outlet; one cash register as well as other fixtures suitable for use in a shop of the character which the corporation might operate were excess. No effort had been made by the corporation to sell either of the cash registers or to sell the other excess equipment.

Shortly before 31 October 1964, Mr. McKay took over a business enterprise in Wickenburg which he had formerly operated and he was in the process of re-equipping the business. He had need for a cash register. He testified that he was operating the business using a cash drawer both at the time of the accident and at the time of the hearing which was held on 20 April 1966.

During the day of 31 October he telephoned his wife and advised her that he was interested in buying a cash register. He requested that she transport a cash register to her home that evening. Mr. McKay's testimony further indicated that he had in mind the cash register he had theretofore sold to the corporation. Mrs. McKay placed a different cash register in her car that evening, testifying that the cash register so placed in her car had record making facilities not essential to the type of business operation in the remaining outlet of the employer corporation. This is the only area of conflict of any substance in the testimony.

Mr. McKay's testimony with reference to his desire to purchase a cash register may be further summarized as follows:

The purpose of the Saturday trip to Tucson was to purchase a cash register from the corporate employer. He was interested in buying this item at the lowest possible price. Had Mrs. McKay not brought the cash register home with her it would have been necessary for both of them to travel to the shop to consummate a sale. He preferred to not engage in extra driving. It was necessary for him to return to Wickenburg Sunday to keep an early Monday appointment in connection with his business. After the accident he inspected the cash register in Mrs. McKay's damaged automobile. The cash register

was damaged by the accident. His visits to the McKay home in Tucson were infrequent due to his dislike for driving.

The evidence further developed the following facts:

A customer had purchased a dress from the corporate employer early in the week of the accident and Mrs. McKay had consummated the sale. The cost of the dress was not established. The dress needed alterations. The customer desired to wear the dress on the evening of 31 October and had planned to call at the corporate place of business during that day to pick it up. On that day it became inconvenient for her to do so and Mrs. McKay agreed to deliver the dress to the customer on Mrs. McKay's way home.

Mrs. McKay left the shop at the normal closing hour as did her daughter. Each drove her own car. The daughter planned to complete personal business on her way home. Mrs. McKay, with the dress and cash register in her car, left the shop and started her homeward journey on her usual route. It was necessary for Mrs. McKay to make a slight detour to deliver the dress and the delivery was consummated without incident. Mrs. McKay then returned to her normal route to her home and while traveling her normal route with the cash register still in her car, she sustained the injuries in question in an automobile accident.

It was not until 25 June 1965 that the first report of the accident and injury was filed with the Industrial Commission by the corporate employer, the report being filed by Ann Hult in her capacity as Secretary-Treasurer. Mrs. McKay explained the delay in that it was not until she was recovering from the accident that she read papers relating to the Industrial Commission coverage paid for out of corporate funds and consulted with her accountant, then realizing that she might have a claim with the Industrial Commission.

■ A.R.S. Section 23–1061, subsec. D allows one year within which to file a claim. The fact of some delay in the presentation of a claim does not, in and of itself, impress us as being evidence that a claim is possibly without merit.

Initially the report referred to Mrs. Mc-Kay's responsibilities in connection with the delivery of the dress. On 17 September 1965, a report of an Industrial Commission investigator was filed and therein we find the first reference in the file to the cash register transaction. While this might, in some instances, be a circumstance to consider, there is no conflict in the evidence in the matter now before us as to the facts.

■ In a sense, all of the witnesses who testified were interested witnesses except the doctor and the dress customer. It is sometimes urged by the Industrial Commission that the Industrial Commission is free to disregard the testimony of interested witnesses solely because of the interest of the witnesses. This position is not well taken. Martin v. Industrial Commission, 75 Ariz. 403, 257 P.2d 596 (1953); Dabbs v. Industrial Commission, 2 Ariz.App. 598, 411 P.2d 36 (1966); Womack v. Industrial Commission, 3 Ariz.App. 74, 412 P.2d 71 (1966); Reed v. Industrial Commission, 3 Ariz.App. 597, 416 P.2d 1018 (1966); and Jeter v. Cudahy Packing Company, 4 Ariz. App. 571, 422 P.2d 402 (1967). The Industrial Commission must evaluate all of the evidence. It may not disregard the evidence of interested witnesses. It may reject such testimony only when it appears that there are matters or circumstances which impair its accuracy. This may arise when the intrinsic character of the evidence or the extrinsic circumstances of the case cast suspicion upon the evidence.

The referee submitted an extensive opinion. To summarize his opinion, he found that Mrs. McKay was acting within the course and scope of her employment in delivering the dress but that her status in that connection terminated when she returned to her normal route of travel to her home. He further found that she was engaged in the course and scope of her employment at the time of the accident due to the prospective sale of the cash register.

The attorney for the fund filed his comments and objections to the report. He apparently felt that there was something intrinsic in the evidence or extrinsic in the circumstances which discredited and rendered nonbelievable the testimony of the interested witnesses. He characterized the proof presented on behalf of Mrs. McKay as "(a) cozy situation for the presentation of the claim"; he referred to the purchase and delivery of the dress by stating that Mrs. McKay * * * "drove to the residence of a person who allegedly had purchased a dress from her * * *"; and in relation to the testimony of both Mr. and Mrs. McKay relative to the necessity of returning to the shop had Mrs. McKay not taken the cash register home with her, he stated "(i)n our case it would seem clear that a special trip would probably have been undertaken the next day if you are to believe the testimony of the witness". The attorney for the fund attended the hearing as did the referee. The members of the Industrial Commission who had the decision making responsibility did not attend the hearing nor did the members of this Court. We know not how much persuasive effect these comments may have had with the Industrial Commission. We do not find them to be appropriate in this instance. We find the testimony to be wholly believable creating only an interesting question of law.

The "going and coming rule" does not find its basis in statutory language. It is case law seeking to assist in the determination as to whether an employee, under the facts peculiar to the particular case, was then within the course and scope of the employment of that employee. The cases and the gradation of facts are too numerous to review. Larson's excellent work entitled "The Law of Workmen's Compensation" and Schneider's equally authoritative "Workmen's Compensation" are not in complete accord. Under one set of facts Larson is more liberal in favor of the employee than is Schneider, and under a different set of facts, Schneider may be more liberal in favor of the employee than is Larson. Both of these authorities have been quoted by the Arizona Supreme Court and by this Court.

■ The matter now before us brings us face to face with a major judicial determination. The Court of Appeals was created by Chapter 102, Laws of 1964, and came into effective being on the first Monday of January 1965. In Section 5, Chapter 102, the statutory responsibility for reviewing awards of the Industrial Commission by writ of certiorari, namely A.R.S. Section 23–951, was amended, the amendment transferring this responsibility from the Arizona Supreme Court to the Court of Appeals. This change in judicial responsibility is also reflected in Section 1 of Chapter 102, as more particularly appears in A.R.S. Section 12–120.21, subsec. A, par. 3. By Chapter 102, Arizona appellate jurisdiction in certain types of criminal cases was left with the Arizona Supreme Court. A.R.S. Sections 13–1711 and 12–120.21, subsec. A, par. 2. State v. Mileham, 1 Ariz.App. 67, 399 P.2d 688 (1965) and State v. Anderson, 102 Ariz. 295, 428 P.2d 672 (1967). In Arizona Podiatry Association v. Director of Insurance, 101 Ariz. 544, 422 P.2d 108 (1966), the Arizona Supreme Court held that in the matter of appeals from the Superior Court, there is concurrent appellate jurisdiction in the Arizona Supreme Court and in the Court of Appeals in those cases which are within the jurisdiction of the Court of Appeals. In our opinion this is distinguishable from writs of certiorari to review the Awards of the Industrial Commission. It is our opinion that it is the statutory responsibility of the Court of Appeals to entertain all writs of certiorari to review the awards of the Arizona Industrial Commission subject to the statutory right to seek a review by the Arizona Supreme Court after the opinion of the Court of Appeals has been rendered.

■■ An appellate tribunal must be free to reconsider the rules which it has set forth in its opinions especially in those matters relating to human rights as dis-

tinguished from property rights. As our society changes the various state and federal courts reflect these changes in new interpretations of certain standard phrases in workmen's compensation as well as other legislation, bearing in mind that the clear intent of the Legislature is not to be amended or changed by judicial decision. A frequent re-examination finds itself in the field of determining whether, under a particular fact situation, an employee is acting within the course and scope of his employment. The Arizona Supreme Court has not shirked its responsibility in this regard nor will this Court when the ends of justice dictate. Now that the Court of Appeals occupies the same position with reference to a review of the Awards of the Industrial Commission as was formerly occupied by the Arizona Supreme Court, it is our opinion that we may, when justice dictates, review the former opinions of the Arizona Supreme Court, in light of today's problems and with regard to trends in the workmen's compensation field except where those decisions were announced on a review by the Supreme Court of a decision rendered by the Court of Appeals.

■ The four Arizona Supreme Court opinions which cast the most light upon the problem which now faces us are Butler v. Industrial Commission, 50 Ariz. 516, 73 P. 2d 703 (1937); McCampbell v. Benevolent & Protective Order of Elks, 71 Ariz. 244, 226 P.2d 147 (1950); Cavness v. Industrial Commission, 74 Ariz. 27, 243 P.2d 459 (1952); and Hancock v. Industrial Commission, 82 Ariz. 107, 309 P.2d 242 (1957).

In the matter now before us the evidence disclosed that at times both Mrs. McKay and her daughter used their personal automobiles in connection with corporate business and at least at times the corporation reimbursed them for this use. There is no evidence as to whether a claim had been or would be submitted to the corporation for the use of Mrs. McKay's car on the evening of 31 October. Whether transportation was furnished by the employer in an em-

ployer owned automobile or whether the employer paid the employee for the use of the employee's automobile may well be of some evidentiary value but is not necessarily controlling. In Butler the injured employee furnished his own means of transportation without reimbursement. He walked.

■ McCampbell follows the general rule that in the absence of some specific showing, an employee is not in the course and scope of his employment while going to his home or returning to his place of employment. Cavness is a case wherein there was a specific showing. Cavness was subject to call 24 hours a day and at the time of the fatal accident, he was en route from his home to his place of employment. The trip was not a special trip except that it was made one hour earlier than usual to enable him to perform an official duty at an hour earlier that his normal office hours. The trip was held to be in the course and scope of his employment. In Cavness the Supreme Court quoted Schneider as follows: (74 Ariz. at 29, 243 P.2d at 461)

> "An exception to the aforesaid general rule is found in cases where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is doing, is on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under the direction of, his employer.
>
> \* \* \* \* \* \*
>
> " 'The special erand (errand) rule means nothing more than that when the employee is on a special mission for the employer he is in the course of his employment and is covered by the compensation act as to injuries arising out of it. It is a rule to assist the Industrial Commission in determining when the employment commences and ceases. \* \* \* ' "

The Supreme Court stated that the " * * mission must be the major factor in the journey or movement and not merely incidental thereto".

On the other hand, Larson states in Section 18.13:

"It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done it; perhaps another time would have been chosen; but if a special trip would have had to be made for this purpose, and if the employer got this necessary item of travel accomplished by combining it with this employee's personal trip, it is accurate to say that it was a concurrent cause of the trip, * * *

"Once this test is satisfied, there is no occasion to weigh the business and personal motives to determine which is dominant. * * * The fact that the personal purpose outweighs the business in the sense that I return with one ounce of goods for my employer and 200 pounds of goods for myself is completely immaterial as long as it can be said that the business trip had to be taken and would have been taken in any case."

In our opinion Larson states the better rule. It is often advantageous to an employer to have a small errand accomplished without a special trip when that errand is incidental to travel which the employee would otherwise undertake.

The following quotation is taken from Butler beginning on page 522 of 50 Ariz., page 705 of 73 P.2d:

"The true test is well set forth in the case of Marks' Dependents v. Gray et al., 251 N.Y. 90, 167 N.E. 181, 183, in the following language:

" 'The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273, 131 N.E. 914. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.' "

We recognize that the opinion which we have reached in connection with the matter now under consideration may be considered to be contrary to the statement quoted from Butler. In our opinion the protection of the employee under circumstances wherein the employer benefits requires a more liberal view. In our opinion, both the delivery of the dress and the transportation of the cash register, the latter being for the purpose of attempting to negotiate a sale, were legitimate business travel enterprises which, had there been no incidental benefit to the employee, would clearly be within the course and scope of Mrs. McKay's employment.

As Larson indicates, the apportionment between the value to the employer and the value to the employee is not controlling. We recognize that it is a factor to be considered. In Hancock, page 109 of 82 Ariz., page 243 of 309 P.2d, our Supreme Court stated:

"It occurs to us that the commission was justified in concluding that an employee would not have been sent on a special mission in a truck on a round trip of between 250 and 300 miles to purchase a $2.50 item of rope. This is especially true when there were other available places of purchase at much shorter distances such as Holbrook or Winslow. In addition the very instructions given the employee indicate a special trip of this nature was not expected."

The situation which faced the court in Hancock is not the situation which faces

this Court in the case now under consideration.

The respondent Industrial Commission urges that the sales price had not been agreed upon before Mrs. McKay started home and that a sale was not consummated. An employee who is unsuccessful in negotiating a sale is none the less acting within the course and scope of that employee's employment.

We are not called upon to discuss or determine Mrs. McKay's status between the time she departed from the home of the employer's customer after delivering the dress, or at the time Mrs. McKay completed her detour and returned to her usual route of travel to her home

 The evidence does not reasonably support the finding of the Industrial Commission that at the time of the accident Mrs. McKay was not within the course and scope of her employment.

The Award is set aside.

CAMERON, C. J., and DONOFRIO, J., concur.