433 P.2d 38

Caroline V. MALINSKI, Widow of Lawrence E. Malinski, Deceased, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent Insurance Carrier,

Black and Ryan Distributors, Respondent Employer.

No. 1 CA–IC 108.

Court of Appeals of Arizona.

Oct. 30, 1967.

Rehearing Denied Dec. 4, 1967.

Review Granted Jan. 9, 1968.

---

Gorey & Ely, by Stephen S. Gorey, Herbert L. Ely, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Dee-Dee Samet, Phoenix, for respondents.

STEVENS, Judge.

We are here concerned with the status of an employee performing a small service for his employer while the employee is en route home after work and the application of the going and coming rule. We have this day rendered our opinion in McKay v. Industrial Commission, 6 Ariz.App. 381, 433 P.2d 32, in which certain aspects of these problems were decided. In the matter now under consideration, we do not repeat our discussion set forth in the McKay decision.

Lawrence E. Malinski had been an employee of Black and Ryan Distributors for some period of time prior to his death. The business location of Black and Ryan was 2645 E. Washington which is easterly from 24th Street. The evidence established that he was a shopman and also an outside man. He and his wife lived in Sunnyslope on Carol Street, one block north of Hatcher Road. Carol Street came to a dead end east of the Malinski residence. The most accessible route from the Malinski residence was to go a short distance to the west to 8th Street or another block to the west to 7th Street.

There was testimony that Malinski usually worked on items such as refrigerators and gas appliances and that he did not usually work on refrigeration units unless the job was a simple job.

There was testimony that there were four men working in the Black and Ryan shop and that each of these men had the use of a Black and Ryan service truck. Malinski had the use of the oldest of the service vehicles. The servicemen customarily took the service vehicles home with them, returning in them on the following morning or retaining them over the week-end.

The vehicle which Malinski had been using was in need of repair and was taken out of service a few days prior to the incident in question. There was evidence that Black and Ryan was considering repairing this vehicle and that the decision to repair or replace the vehicle had not been reached. On prior occasions when the vehicle had been disabled, Malinski had driven his jeep pickup truck to work and while at work had used the vehicle on company business being reimbursed for mileage. Malinski also owned a motorcycle, which he had owned for approximately 6 months prior to the incident in question, during which time he had driven the cycle approximately 3400 miles. Most of the riding was on week-ends including trips to the lakes and trips over the busy Black Canyon Highway.

Mrs. Malinski testified that Malinski told her that many times he was late in arriving home for the reason that he had stopped

by to see a customer to ascertain whether a minor repair could be made, or to ascertain the materials which might be needed for the following day in order to save time when the repair was undertaken and avoid useless backtracking for parts. This was an employee practice of the servicemen of Black and Ryan, there being testimony that other servicemen also rendered this extra bit of service on behalf of their employer.

On the day in question, Tuesday, 10 September 1963, Malinski rode his motorcycle to work. During the course of the afternoon he accompanied another serviceman in another vehicle on company business and returned to the Black and Ryan place of business in the neighborhood of 5 o'clock in the afternoon, this hour being the normal quitting time. He was seen leaving the place of business of his employer on his motorcycle shortly after 5 o'clock. Mrs. Malinski testified that he did not carry his tools with him on the motorcycle. According to the police report of the accident, which report was introduced in evidence, Malinski was involved in a motorcycle-motor vehicle accident at the corner of 15th Street and Granada at 5:33 that evening. He died the same day and there is no evidence that following the accident he made any statement to anyone with reference to his activities between the time he left his employer's place of business and the time of the accident.

It was not until the 4th day of May 1964 that Mrs. Malinski first contacted the Industrial Commission with reference to the possibility of seeking her widow's compensation. The service manager of the employer rendered a report to the Industrial Commission stating in part:

> "This employee had finished his shift and was en route home on his own motor cycle and was involved in a fatal accident. He was not in line of duty or on official business for this company."

It is unfortunate that the widow's claim was delayed in that a reading of the transcript of the testimony indicates that the recollection of the witnesses as to certain important details had dimmed, especially in relation to specific dates and hours.

There was introduced in evidence a service invoice bearing date of 9 September 1963 in the name of B. Lambert with the address of 1401 E. Garfield. Under the item "Service Requested" the following insertion was made, "Replace thermostat". The date that the last quoted item was inserted was not established. While there was some possible inconsistency in Mrs. Lambert's recollection it appears quite clear that someone from Black and Ryan called at their home about dinner time on the 10th of September and inspected a refrigeration room air conditioner. She described the appearance of the individual. A fellow employee testified that of all the Black and Ryan servicemen, only Malinski fitted this description. When shown a color photo of Malinski, which was a part of his driver's license, Mrs. Lambert testified that this looked like the man who had called at their home. Mrs. Lambert testified as to their usual dinner time which could have placed Malinski's arrival at their home prior to 5 o'clock although this testimony was not positive and unequivocal. Mrs. Lambert testified that some days elapsed after the Black and Ryan employee called at their residence before the repair was made and that it was necessary to again call Black and Ryan to secure a completion of the repair order. The repair was made by a man who did not enter the employment of Black and Ryan until the 23rd of September. The testimony indicates that when a follow-up telephone call is made by a customer and the original service invoice can be found, it is not customary to write a new service invoice.

A map was introduced in evidence on which were marked the Malinski residence, the Lambert residence, the site of the fatal accident and the location of Black and Ryan. This map has been reproduced and is made a part hereof. In addition to the

① = Residence of DEC.

② = Site of fatal accident

③ = Shop APPLICANTS

④ = Residence of the LAMBERTS

Exhibit No. 1
In evidence
Date 10-19-64
Claim No AZ-PA508-S L.E. MALINSKY

marks which were placed on the exhibit at the hearing, and for ease of reference, the Court has circled the names of the following streets: Central Avenue, 7th Street, 16th Street, 24th Street, Camelback Road, Thomas Road, McDowell Road, Roosevelt, Van Buren and Washington. In order to accommodate the map, the area of approximately two miles between Camelback and Thomas has been deleted. The Lambert residence is one block south of Roosevelt and approximately two blocks west of 16th Street whereas the accident occurred three blocks north of McDowell and one block west on 16th Street. Mrs. Malinski testified that she believed that her husband frequently used 16th while going to and from work. Efforts are made to conjecture as to why Mr. Malinski did not go directly from the Lambert residence either east to 16th Street or west to 7th Street in view of the time of day, the traffic conditions, the presence of stop signs and other potential traffic problems. It is the opinion of the Court that the map clearly shows that there was no deviation from a reasonably direct route between the Lambert residence and an appropriate route of travel to the Malinski home.

 The real issues are whether Malinski in fact called at the Lambert residence on the evening of 10 September; if he did call, whether this was in the scope of his employment and in the furtherance of his employer's business; and whether the "going and coming rule" is applicable. In relation to the second matter, there is evidence which would negative a specific direction being given to Malinski to call at the Lambert home to ascertain the nature of the problem. It is urged that since he was traveling on his own privately owned motorcycle, that the going and coming rule cannot be applied. The Court is not impressed with the fact that he was using his personal conveyance at the time in view of the custom of servicemen to use company vehicles going to and from home and in view of the frequent occasions on which servicemen make after hours calls for the benefit of their employer in order to save time for the employer and the customers in inspecting the work to be done. Unfortunately there is no express finding either confirming or negativing the Malinski visit at the Lambert home on the evening of 10 September between the time he left the employer's place of business and the time of the fatal accident. In the report of the referee this issue is not squarely met in that the report states:

"Assuming arguendo that the deceased did make a service call at the Lambert residence * * * it appears to this writer that the deceased could have had ample time to make his service call and arrive at the accident site by 5:33 p. m."

The referee makes certain findings which findings are incorporated verbatim into the decision of the Commission which reaffirmed a previous finding and award denying a claim of the widow. These findings are:

"1. That at the time of the fatal accident the deceased was on his way home traveling in a northerly direction on 15th Street.

"2. That at said time and place, deceased was not performing services for his employer.

"3. That the employer neither provided transportation nor paid mileage for travel to and from work.

"4. That the accident of September 10, 1963, did not arise out of nor in the course of the deceased's employment."

The petitioner, through her attorney, made a prompt and timely protest as to these findings. The petitioner urges upon this Court that the above quoted findings are incomplete and not a sufficient basis upon which the Court of Appeals can adequately review the record. It is sometimes difficult to determine whether findings are adequate and this sometimes leads to differences of opinion. For example in Graver Tank and Manufacturing Co. v. Industrial Commission, 96 Ariz. 34, 391

P.2d 589 (1964), the Arizona Supreme Court made the following statements:

"* * * The question as to whether the accident arose out of and in the course of the employment is an ultimate fact which must be found by the Commission. * * * The Commission need not set forth the separate findings on the evidentiary facts which lead to a determination of the ultimate fact. * *

"The Commission, in its original award, did find the ultimate fact required to be found. * * *"

On the other hand in Hatfield v. Industrial Commission, 89 Ariz. 285, 361 P.2d 544 (1961), the court stated:

"Findings of administrative agencies must be explicit to make it possible for the court to make an intelligent review and to determine whether the facts as found provide a reasonable basis for the decision. The findings must be sufficiently definite and certain to permit a judicial interpretation (citing case). An award should be set aside if the findings lack precision and are too indefinite to aid the courts in reviewing the award.

* * *

"Suffice it to say that the findings are too indefinite and the award is set aside."

Other cases of like import are Sproul v. Industrial Commission, 91 Ariz. 128, 370 P.2d 279 (1962); and Cammeron v. Industrial Commission, 98 Ariz. 366, 405 P.2d 802 (1965). In Cammeron, the Supreme Court observed that:

"* * * it was error for the Commission to refuse to make findings pertaining to this issue."

This particular portion of the opinion is quoted in view of the objection by the petitioner addressed to the Commission relative to the sufficiency of the findings.

■ The Commission urges that the petitioner has not borne the burden of proving the facts necessary to establish her entitlement to her widow's benefits. The Commission urges that the burden of proof is on the petitioner. We recognize that this rule of law applies in Industrial Commission matters. Helmericks v. Airesearch Manufacturing Co. of Ariz., 88 Ariz. 413, 357 P.2d 152 (1960); Waller v. Industrial Commission, 99 Ariz. 15, 406 P. 2d 197 (1965); Nye v. Industrial Commission, 5 Ariz.App. 165, 424 P.2d 207 (1967). We discussed this rule in Lewis v. Industrial Commission, 2 Ariz.App. 522, 410 P.2d 144 (1966) and therein we stated:

"On appeal, by writ of certiorari, this Court can only affirm or set aside the award of the Industrial Commission. We recognize that the injured workman has the burden of proof in relation to establishing that he is entitled to compensation. At the same time, proceedings before the Industrial Commission are not truly adversary proceedings. Certainly there is no obligation on the part of the Industrial Commission to seek out and present matters in derogation of compensation, the Commission's obligation being to impartially inquire into all of the facts both favorable and unfavorable."

In those instances wherein the employee meets his death and the evidence is unable to explain the circumstances surrounding the fatal accident, circumstantial evidence plays an important role. As was stated in Lewis, it is the Commission's obligation to make an impartial inquiry into all of the facts. If the facts which are brought to light by the Commission and the facts which are brought to light by the petitioner are not reasonably persuasive as to the right to compensation, then the concept of the person who has the burden of proof comes into play to ascertain whether or not the evidence reasonably supports the claim of the petitioner or the decision of the Commission.

■ We hold that under the circumstances of this case, notwithstanding the absence of findings with clearer particularity, that it was established that on the

date in question, Malinski in accordance with custom, called at the Lambert residence in the interest of his employer. But for the fact that the truck was disabled, he would have been driving his employer's vehicle. We find no material deviation from a reasonably direct route to his place of residence between the time of the duty call and the time of the fatal accident.

The remaining question is the application of the going and coming rule. Under the circumstances we find no significance in the fact that Malinski was using his personal vehicle in place of using the employer's disabled truck.

In McKay, we expressly reserved two questions in relation to the application of the going and coming rule, these being stated as follows:

> "We are not called upon to discuss or determine Mrs. McKay's status between the time she departed from the home of the employer's customer after delivering the dress, or at the time Mrs. McKay completed her detour and returned to her usual route of travel to her home."

In the case now under consideration, we are not called upon to determine an employee's status once he has completed his business detour and has returned to his usual route of travel to his home. We do determine his status up to the time he returned to his usual route of travel to his home. We hold that Malinski continued in the course and scope of his employment at least from the time he left the Lambert residence until he returned to his usual route to his home, there being no deviation from a reasonably direct route between the Lambert residence and an appropriate route of travel to the Malinski home.

The evidence does not reasonably support the Award.

The Award is set aside.

CAMERON, C. J., and DONOFRIO, J., concur.