503 P.2d 394

Ozro M. HUFF, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Edward J. Farrell and Eddie J. Farrell (Far-
rell & Farrell), Respondent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. 1 CA–IC 647.

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 28, 1972.

Rehearing Denied Dec. 29, 1972.

Review Denied Jan. 23, 1973.

Bernard I. Rabinovitz, Tucson, for peti-
tioner.

William C. Wahl, Jr., Chief Counsel,
The Industrial Commission of Arizona,
Phoenix, for respondent.

Robert K. Park, Chief Counsel, State
Compensation Fund by James E. Mc-
Dougall and Donald F. Schaar, Phoenix,
for respondent employer and carrier.

DONOFRIO, Judge.

This case is before the Court by writ of
certiorari to review the lawfulness of an
award and findings of the Industrial Com-
mission of Arizona issued April 6, 1971,
affirming an award for unscheduled per-
manent partial disability and denying appli-
cant's petition for hearing on the grounds
that his petition showed no evidence that
was not previously considered by the Com-
mission. On April 26, 1971, within twenty
days following the issuance of the award
of April 6, 1971, counsel for applicant-peti-
tioner filed a request for hearing on the
award upon the grounds that the Commis-
sion overlooked the fact that the applicant
had a conversion reaction related to the in-
dustrial injury which explains his loss of
earning capacity and renders him totally
disabled. No action was taken on this re-
quest, and this appeal followed. This case
is decided under the law as it existed prior
to January 1, 1969.

The question before the Court is wheth-
er the award is reasonably supported by
the evidence. It is petitioner's position
that he has shown that he has sustained a
functional or mental disability related to
the industrial injury in addition to his
physical disability and that the Commission
has ignored this fact in the case.

Petitioner suffered an industrial accident on December 6, 1967 wherein he sustained an acute crushing wound to the lower abdomen and a fracture of the anterior third of the body of the second lumbar vertebra with no compression or displacement when he got caught in between a plow and a tractor. The claim was accepted for benefits by the Industrial Commission on January 10, 1968.

On August 2, 1968 the Commission issued its award for continuing benefits and established petitioner's average monthly wage. Petitioner hired counsel, an able practitioner in this field, and protested the award. After a hearing the Commission raised the average monthly wage from $361.53 to $441.67. The decision was rendered on July 11, 1969. Thereafter petitioner became dissatisfied and discharged his attorney. In the interim petitioner went to another able attorney in the field of compensation law to review his case, but did not employ him. He also consulted still another able lawyer which also did not end up in representation. Thereafter petitioner attempted to represent himself. He filed a protest to the Commission decision but did not file a petition for hearing.

What occurred procedurally from here on can be briefly set forth as follows. On October 10, 1969 the Commission issued findings and award and order pending determination of petitioner's earning capacity. The award found that petitioner's physical condition became stationary on August 19, 1969; that he had sustained an unscheduled disability; and that he was entitled to medical benefits and compensation for temporary disability through September 16, 1969. The Commission was unable to determine what effect petitioner's disability had on his earning capacity as the evidence was insufficient thereon and it therefore reserved jurisdiction to make this determination. It also reserved jurisdiction to determine the issue of attorney's fees which was raised by petitioner's previous counsel. Pending determination of all this, petitioner would receive an advance in partial permanent benefits.

Petitioner protested this award of October 10, 1969, and on November 18, 1969 petitioned for a hearing which was held on April 22, 1970. Petitioner was not represented by counsel at this hearing, nor were any witnesses subpoenaed by him. At the conclusion of the hearing a motion for further hearing was granted in order to take the testimony of witnesses who were unable to appear.

On May 28, 1970 a further hearing was held and again petitioner was not represented by counsel, nor had he subpoenaed anyone to testify in his behalf. However, testimony was taken from Dr. Kelley, Mr. Lamoreaux (rehabilitation expert) and petitioner.

The referee issued his report on June 10, 1970, finding that petitioner had sustained a 45.66% reduction in monthly earning capacity as a result of his industrial injury and was entitled to $110.92 per month until further order of the Commission. Thereafter petitioner retained yet another counsel to represent him. This attorney filed timely objections to the referee's report.

On July 31, 1970 the Commission issued its decision upon hearing and findings and award for unscheduled permanent partial disability in affirmance of the referee's report.

On August 6, 1970 petitioner's attorney filed a petition for rehearing on the grounds that the award was arbitrary in granting petitioner only $110.92 per month, and that there was a total lack of showing that there were jobs present and available to petitioner which he would be able to perform in his current physical condition, making no mention of his functional overlay.

On February 18, 1971 the referee, who stated he had reviewed the entire file, recommended affirming the award and denying rehearing with a thirty-day clause. On April 6, 1971 the Commission issued an order denying the petition for hearing and attached a thirty-day clause.

Petitioner then retained the services of a new attorney who is his present counsel.

This attorney filed another petition for rehearing on April 26, 1971 on the grounds that the Commission had overlooked the fact that petitioner had a conversion reaction related to his industrial injury which resulted in a loss of earning capacity and rendered him totally disabled. No action was taken on this petition, and this appeal followed.

The crucial question presented is whether the Commission failed to make a determination of a vital issue in the case, namely, the issue of whether petitioner sustained a functional or mental disability related to his industrial injury in addition to his physical disability.

In Hatfield v. Industrial Commission, 89 Ariz. 285, 361 P.2d 544 (1961), an award was set aside because of the imprecise nature of the findings of the Commission with respect to the issue of whether an accident and injury proximately caused mental illness. We believe the reasoning therein is applicable to our case and that there was no finding on or proper mention in the award of petitioner's mental or functional problems.

Inasmuch as petitioner employed an attorney for only a brief period shortly after the referee's report of June 10, 1970, and inasmuch as the issue herein was raised differently than it was in Hatfield, we believe it helpful to set forth some of the facts from the beginning which bear upon the mental disability issue.

The record shows that on March 14, 1968 a letter was filed from Dr. Harold C. Willingham stating that petitioner was extremely antagonistic, suspicious, and demanding. The Commission file continues to show as follows: June 29, 1968, a notation from Dr. Colling indicating petitioner claims impotency, tendency to weave, fears cancer, fears one hip is larger than the other; July 23, 1968, a group consultation with Drs. Lofdahl, Gans and Ettleson, in which it is noted that the patient is over-concerned with his condition; October 11, 1968, a notation from Dr. Alway concerning stocking type of hypesthesia concerning the right leg. Then, on November 16, 1968, Dr. Duisberg, a psychiatrist, reports:

"Thus it would appear that the elements of conversion reaction were heretofore essentially unconscious, and held at that level by the current mechanism of righteous indignation . . . If, on the other hand, surgery has little more to offer than conservative treatment, then his course should be followed and be augmented by psychotherapy for a reasonable but limited time. . . ."

To continue, on November 26, 1968 there is a report from Dr. Kelley citing Dr. Duisberg's opinion that the petitioner had a conversion reaction, and surgery for a lumbar disc was decided against due to the functional overlay; on November 29, 1968, a memorandum from Dr. Walter V. Edwards, State Compensation Fund Medical Director, approving Dr. Duisberg's bill and suggestion for psychotherapy treatment for supportive purposes; on December 4, 1968, a report from Dr. Duisberg stating, "psychiatric prognosis guarded"; on December 3, 1968, a report from Dr. Alway indicating that in Dr. Duisberg's opinion the claimant would benefit from vocational rehabilitation; on November 14, 1968, a report from Dr. Kelley indicating evidence of functional overlay; and on June 30, 1969, a report from Dr. Kelley as follows:

"Possible complaints referred to small disc protrusion at L4–5 on right, on the other hand there is a definite suggestion of functional overlay which I feel arises from concern rather than any conscious exaggeration of his symptoms and in view of this it is difficult to recommend surgery."

After the foregoing the record shows that on August 19, 1969 a final group consultation was held at which time the petitioner was examined by Drs. Lofdahl, James R. Moore, Ettleson and Richard Morgan, none of whom are psychiatrists. The conclusion of this board of consultants was stated as follows:

" . . . he has a general *physical* impairment attributable to the accident of 12–6–67." (emphasis ours)

This wording was restated by Dr. Alway in his report of September 14, 1969, and subsequent to this report there were no further medical evaluations or reports submitted to the Commission prior to the entry of its findings and award for unscheduled permanent partial disability.

It is to be noted that at the two formal hearings held following the petition for hearing filed by the petitioner he was not represented by counsel. The only medical testimony submitted at the hearings was that of Dr. Kelley, the neurosurgeon, who testified that as a result of his industrial injury the petitioner had sustained a mild physical disability, and that he should not engage in heavy work, but was able to perform light work approximately two to three hours per day.

At the hearings petitioner testified that he was totally unable to work, and during the course of the second hearing asked the referee if it was necessary for him "to get a doctor or what?" The remaining testimony taken at the hearings was that of Mr. Lamoreaux who testified that based upon the limitations stated by Dr. Kelley, there were several jobs that petitioner could perform, among which were night watchman, fire guard, salesclerk in a liquor store, operation of a self-service gasoline station, and light delivery work, all of which would show an earning capacity for the petitioner of approximately $240.00 per month.

Both the referee's report of June 10, 1970 and the decision upon hearing and findings and award for unscheduled permanent partial disability of July 31, 1970 state that:

"As a result of said injury the applicant has sustained a 10% general physical impairment which limits him in bending, lifting, etc. . . ."

As a result, the Industrial Commission found an unscheduled permanent partial disability.

From the foregoing procedural facts, and from the facts relating to the petitioner's mental condition, it is apparent that the Commission treated petitioner's case only with reference to his general physical condition without making any reference to his functional impairment. The hearing officer in his referee's report and the Commission in its award treated only the 10% general underlying physical impairment, again making no mention of petitioner's functional or mental impairment. The award was silent as to the uncontradicted evidence by Dr. Duisberg regarding petitioner's conversion reaction. It was also silent as to all the other evidence regarding petitioner's mental condition.

To list just a few of the entries in the file from the beginning in 1968: Dr. Willingham wrote that petitioner was extremely antagonistic, suspicious and demanding. Dr. Colling noted that petitioner claims impotency, tendency to weave, fears cancer, fears one hip is larger than the other. Dr. Duisberg reported elements of conversion reaction, suggesting that treatments be augmented by psychotherapy. There was other medical evidence, including Dr. Kelley's statement that there was a definite suggestion of functional overlay. In addition, petitioner evidenced instability in retaining legal counsel. He ran the whole gamut of dissatisfaction with lawyers and others, topped off by his retaining a lawyer at the very last minute after the referee's report of June 10, 1970, and later severing relations with him.

Although a person representing himself is accountable in the same way as a duly licensed and practicing attorney, we cannot ignore the fact that in representing himself petitioner was having difficulty in filling out forms and that under the circumstances it could be easily surmised by the Commission that because of his mental frame of mind he might not be able to recognize his true mental condition to the extent of raising the proper issue, subpoenaing witnesses, and presenting the proper medical evidence to prove that issue. We believe counsel who was called in at the last minute prior to present counsel was at a great disadvantage in dealing with peti-

tioner because of the circumstances. We do not intend to be critical of the attorney or the Commission. We believe, however, that the moment an error is discovered, such as is reflected in this record, it should be corrected at the first opportunity.

 Considering the entire record as a whole, we believe there has been a serious error committed in overlooking the abundance of evidence suggesting a functional overlay and not passing upon it. The record is replete with evidence on this mental condition and nothing therein suggests that petitioner has waived consideration of the issue. The error is so vital that even though the attorney called in by petitioner for a short time after the June 10, 1970 referee's report may have overlooked it, the Commission should nevertheless have looked into the matter when present counsel called it to their attention.

The award containing no finding with reference to the functional disorder, and being imprecise with respect to such issue, it must be set aside as not being reasonably supported by the record.

STEVENS, P. J., and CASE, J., concur.