320 P.2d 950

Richard H. WAMMACK, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, and Peerless Concrete Pipe Company, Respondents.

No. 6495.

Supreme Court of Arizona.

Feb. 5, 1958.

H. S. McCluskey, Phoenix, for petitioner.

John R. Franks, Phoenix, for respondent Industrial Commission. Donald J. Morgan, Robert K. Park, and James D. Lester, Phoenix, of counsel.

STRUCKMEYER, Justice.

Petitioner Richard H. Wammack, while working for the Peerless Concrete Pipe Company, suffered injuries in an accident arising out of and in the course of his employment. He sustained severe contusions of the hips and legs with marked compression of the pelvis, a fracture of the left pubis and of the sacrum. On April 18, 1956, the Commission found that the monthly wage of petitioner prior to his injury was the sum of $377.89, and awarded temporary partial disability pending determination of permanent partial disability. Two further hearings were held. The first resulted in an award on October 10, 1956; the second, on petitioner's motion for rehearing, in an award on May 23, 1957. Thereafter, on June 4, 1957, a second application for rehearing was filed, but prior to any formal action by the Commission, a petition for writ of certiorari was filed in this court.

Petitioner questions the determination by the Commission of the average monthly wage prior to his injuries. This determination, as was pointed out, was initially made on April 18, 1956. Under the decisions of this court, the findings and award are conclusive unless presented on appeal within thirty days after denial of a motion for rehearing. Kelsey v. Industrial Commission, 79 Ariz. 191, 286 P.2d 195; Hamlin v. Industrial Commission, 77 Ariz. 100, 267 P.2d 736; Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217.

Petitioner further questions the action of the Commission in adopting its findings and award of May 23, 1957.[1]

1. The Findings and Award of May 23, 1957, so far as they are material, here follow:

Findings

"9. That applicant was released to a working status on September 12, 1955, by his attending physician.

"10. That since December 19, 1956, claimant has been engaged in the manufacturing of concrete MCP style outlet boxes and slides used for irrigation purposes, for which he is paid on a piece work basis.

"11. That during the period from January 19, 1957 to March 14, 1957 inclusive, the claimant earned a total of $522.-86 in the manufacturing of said boxes and slides.

"12. That claimant's work history and earnings in the manufacturing of said boxes and slides indicates that he is physically and mentally able to earn the sum of $51.36 per week and therefore claimant has sustained a 41.11% loss of earning capacity attributable to the accident of January 25, 1955.

Section 23–1044, subd. C, A.R.S.1956 provides that in cases of permanent partial disability there shall be received by the employee compensation equal to 55% of the difference between the average monthly wages before the accident and the amount which represents the reduced monthly earning capacity resulting from the disability. In determining the amount of the reduced monthly earning capacity, Section 23–1044, subd. D, A.R.S.1956 requires the Commission to give consideration "to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury."

 Before proceeding further, certain infirmities in the findings upon which the last award of May 23, 1957 was based should be observed. First, as shown by finding number 11, the work period used by the Commission to determine claimant's earnings was from January 19, 1957 to March 14 of the same year. This use by the Commission of 55 days tends to falsely suggest a higher earning capacity than actually existed. The record shows that petitioner commenced the manufacture of outlet boxes and slides on December 19, 1956. He worked continuously, in the sense of having no other employment, from that time until March 14, 1957, for a total of 86 days. During this period of time he earned $540.42. We hardly think it proper for the Commission to single out a portion of petitioner's work period during which the cumulative effect of petitioner's labors would ostensibly evidence a higher earning capacity than actually existed.

 Second, it is impossible to commend the procedure used in finding number 12. Therein the Commission, by previous work history and earnings, determined that petitioner has a capacity to earn $51.36 a week. By what relevant mathematical procedure the sum of $51.36 can be derived from the

"13. That said loss of earning capacity entitles the claimant to an Award for Unscheduled Permanent Partial Disability pursuant to A.R.S. Section 23–1044 C and D, 1956, in the sum of $85.44 monthly until further order of this Commission.

"14. That in determining that applicant has a reduced monthly earning capacity as a result of his injury by accident, this Commission has given full consideration to each of the matters set forth in Section 23–1044 D, A.R.S., 1956, and full consideration to all other facts and circumstances pertaining to the case."

Award

"3. Compensation for unscheduled permanent partial disability under A.R.S., Section 23–1044 C & D, 1956, of the Arizona Workmen's Compensation Law, in the sum of $85.44 per month, to continue until further order of this Commission, the first payment effective as of November 16, 1956, and payable when award becomes final."

claimed total earnings set forth in finding number 11 is not explained in the record, nor are we able to imagine a possible basis thereof. Moreover, the finding that claimant was able to earn $51.36 a *week* does not comply with the statutory requirement that the determination shall be of the reduced *monthly* earning capacity.

◼ Third, the Commission by its purported finding number 14 states that it has given full consideration to each of the matters set forth in Section 23–1044, subd. D supra and full consideration to all of the facts and circumstances pertaining to the case. Other than the wages received for work performed subsequent to the injury, the findings do not reflect what matters were given consideration in arriving at reduced earning capacity and we are of course wholly unable to determine how they influenced the ultimate award. The mere statement that these matters and others have been given consideration does not save this award from the appearance of being arbitrary.

◼ It is the rule that the findings of administrative agencies must be explicit to enable the reviewing court to review the decision intelligently and to ascertain whether the facts as found afford a reasonable basis for the decision or be sufficiently definite and certain to permit of judicial interpretation. Dole v. Industrial Commission, 115 Utah 311, 204 P.2d 462; Boen v. State Industrial Commission, 202 Okl. 258, 212 P.2d 457; and see 73 C.J.S. Public Administrative Bodies and Procedure § 140, p. 468. The findings in this case are not only contradictory, but when examined in the light of the evidence presented to the Commission are devoid of any apparent relevant foundation. An award must be predicated upon actual evidence in the case and the various imponderables must find some support in evidence. Eaves v. Industrial Commission, 73 Ariz. 78, 237 P.2d 809; Miles v. Industrial Commission, 73 Ariz. 208, 240 P.2d 171.

We agree with petitioner that it is impossible to determine from his work history and earnings in the manufacture of boxes and slides his reduced monthly earning capacity resulting from the disability. At the hearing on petitioner's motion for rehearing, many witnesses were called who testified to his general physical incapacity. Among these was Harold E. Baker, president and manager of the Peerless Concrete Pipe Company, petitioner's employer for a year prior to the accident and only employer since the accident. He testified that petitioner was not able to perform the ordinary work in the business in which he had been employed prior to injury and that from December 19, 1956 through March 14, 1957 the company paid petitioner on a piecework basis. He further testified that the company made a job for petitioner and would not employ him except for the fact that he

was injured in its employ. On cross-examination he stated:

"Q. There is no indication at this time that you are going to release him tomorrow or the next day, is there? A. Yes, there is.

"Q. What indication is that? A. If the Industrial Commission would pick up the load we could be relieved of this burden, carrying this man."

Baker further testified that there was no similar work of this type in this locality:

"Q. When that contract has run out with the Citrus Growers, the work he has been doing will terminate? A. That is right.

"Q. Would you have any other work for him? A. I don't anticipate any, sir.

"Q. Do you know where he can get any work of similar nature in this vicinity? A. No, if I did, I, quite frankly, would attempt to secure a job for him."

Petitioner is a man of forty-two years, with a fourth-grade education, whose only apparent ability to earn a livelihood is through physical labor. Plainly, the employment upon which the Commission relies to indicate reduced earning capacity has no relationship to petitioner's ability to obtain and hold a job in a competitive market. This was a temporary job made for a person whose physical condition was such that he was not otherwise qualified to retain a responsible position in this industry. We have previously said that the Commission is to determine as nearly as possible whether in a competitive labor market the subject, in his injured condition, can probably sell his services and for how much. We have also said that there must be some evidence that the man is able to adequately perform the services in the classification prescribed. Davis v. Industrial Commission, 82 Ariz. 173, 309 P.2d 793. In the light of the uncontradicted evidence above quoted, the entire record, and our prior pronouncement, it is evident that no sincere or bona fide effort has been made to comply with the cited sections of the Workmen's Compensation Act of this state.

One further point should be made. Petitioner asserts that he has been denied due process of law arising out of these circumstances. On June 6, 1957, after having filed his petition and application for a second rehearing with the Commission, there was prepared by the Commission's counsel a memorandum to the claims department which in effect stated that petitioner's administrative remedy was exhausted and that his only further recourse was by writ of certiorari to this court. A copy of this memorandum was sent to counsel for petitioner. He thereafter waited until June 19 for the Commission to either grant or deny the motion for rehearing, and when neither was forthcoming appealed to

this court. By statute, section 23–951, A.R.S.1956 an appeal may be perfected to this court within thirty days after an application for a rehearing is denied or, if granted, within thirty days of rendition of the decision thereon. This statute clearly contemplates jurisdiction in the Commission to rehear an award previously rendered. It has been construed to mean under the doctrine of exhaustion of administrative remedies that the Commission must be given the opportunity to correct its errors before this court will entertain a writ of certiorari to review the lawfulness of the award. Ross v. Industrial Commission, 82 Ariz. 9, 307 P.2d 612.

The question then arises whether the Commission has jurisdiction to further reconsider its decisions. As to this, the answer must be in the affirmative. The power to reconsider is inherent in the power to decide. Albertson v. Federal Communications Commission, 87 U.S.App.D.C. 39, 182 F.2d 397. The Commission had the jurisdiction to entertain the second motion and the power to grant or deny it. The granting of a first motion to rehear the award has the effect of setting aside or vacating that award and when on rehearing the cause on its merits, the subsequent award supersedes the former. An aggrieved party has the same right to move against it as he had the right to move against the former award. When a second or a subsequent motion for rehearing is applied for, the Commission need not grant the motion but may deny it. Carter v. Industrial Commission, 76 Utah 520, 290 P. 776. While a party has the privilege of applying for a second rehearing, he is not compelled to do so in order to exhaust his administrative remedies. Edwards v. Industrial Commission, 112 Utah 472, 189 P.2d 124. Consequently, because the petitioner appealed to this court before the Commission acted thereon, the effect was to waive further action on the second petition and oust the Commission of any jurisdiction to proceed further.

For the foregoing reasons it is ordered that the award of May 23, 1957 be set aside.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.