855 P.2d 1357

**Betty L. MILLER, a qualified elector of the County of Pinal, State of Arizona, Plaintiff/Appellee,**

v.

**The BOARD OF SUPERVISORS OF PINAL COUNTY and the individual members thereof in their official capacity; Kathleen C. Felix, Pinal County Recorder; and Gilbert B. Hoyos, Pinal County Elections Department Director, Defendants,**

**and**

**Jack HARMON, an individual residing in the County of Pinal, State of Arizona, Defendant/Real Party in Interest–Appellant.**

No. CV–92–0269–AP.

Supreme Court of Arizona, En Banc.

July 22, 1993.

David F. Alexander, Mesa, for Betty L. Miller.

Roy A. Mendoza, Pinal County Atty. by Allen C. McVey, Florence, for defendants.

Udall, Shumway, Blackhurst, Allen & Lyons, P.C. by David K. Udall, Richard J. Harris, Mesa, and Taylor & Cawthorne, Ltd. by Elizabeth B. Harmon, Tucson, for Jack Harmon.

## OPINION

FELDMAN, Chief Justice.

Dr. Jack Harmon ("Harmon") brings a direct appeal from an injunction granted by the Superior Court of Pinal County in an action challenging nominating petitions. *See* A.R.S. § 16–351 (1984) (establishing the proper procedure to challenge such petitions). The trial court ruled that Harmon's petitions lacked sufficient valid signatures to qualify him for the ballot in the Democratic primary election for the office of Pinal County Superintendent of Schools.

This court has direct jurisdiction to review election appeals from the superior court. A.R.S. § 16–351(A) ("Such decision shall be appealable only to the supreme court."); *see* ARIZ. CONST. art. VI, §§ 5(3) and 5(6). After hearing argument, we vacated the trial court's judgment by order and remanded with instructions to dismiss the complaint. Our order noted that this written opinion would follow.

## FACTUAL AND PROCEDURAL HISTORY

Harmon, a Pinal County educator for twenty-five years, served as the superintendent of the Oracle School District from 1973 to 1990. During his career, Harmon taught at various levels and served as a counselor, coach, vice principal, and principal. In 1992, he directed an educational foundation and served on the Oracle Elementary School District board.

On June 19, 1992, Harmon filed 60 nominating petitions containing 1104 signatures to qualify as a candidate in the 1992 Democratic primary election for county school superintendent. One day after the filing deadline, Betty L. Miller ("Miller") filed a complaint in the Pinal County Superior Court challenging the sufficiency of Harmon's petitions. Specifically, Miller questioned whether Harmon had obtained the minimum 667 signatures from qualified Pinal County electors, as required by Arizona law. *See* A.R.S. § 16–322(A)(10). Miller sought to enjoin the Pinal County Board of Supervisors ("Board") from placing Harmon's name on the primary election ballot.

During the two-day bench trial, Miller raised many distinct challenges to particular signatures and petitions filed by Harmon. Overall, the trial court considered a myriad of factual and legal issues, including claims that: (1) some signatories were not registered voters on the date that they signed the petition; (2) some did not reside in Pinal County; (3) some addresses written on the petitions were illegible or nonexistent; (4) some addresses on the petitions were different from those given on the affidavit of registration; (5) some signatories were disqualified because they had changed address within the same precinct after registering to vote; (6) some signatures did not match the signatures shown on the affidavit of registration; (7) some signatures were illegible; (8) some persons signed Harmon's petitions more than once; (9) some had signed the petitions of other candidates for the same office; (10) some petition circulators were not qualified electors in Pinal County; and (11) some circulators were not present when the petitions were signed.

Both parties submitted timely requests for findings of fact and conclusions of law. *See* Ariz.R.Civ.P. 52(a). On July 8, 1992, the trial judge took the matter under advisement, stating that he would rule the next day. Five days later, at the statutory deadline, the trial court issued a minute entry order enjoining the Board from printing Harmon's name on the primary election ballot. The order and subsequent judgment contained the court's findings of fact and conclusions of law. In full, they read as follows:

THE COURT FINDS as a matter of fact that there are at least 568 signatures not valid as a result of unqualified circulators, [illegible] signatures, invalid addresses, persons living out of the precinct and duplication in signing other petitions for the same office, therefore,

THE COURT FINDS as a matter of law insufficient signatures to place the candidate on the ballot.

On July 17, Harmon filed his notice of appeal to this court. We later granted Miller's motion to suspend the appeal and revest jurisdiction in the trial court to consider her motion to amend the judgment. Miller's proposed amended judgment included forty-five distinct findings of fact. On July 27, after considering Miller's motion, the trial court decided not to amend its original judgment. On subsequent consideration, we vacated the judgment and remanded the case with instructions that the trial court dismiss the complaint.

## ISSUES PRESENTED

Harmon's direct appeal presented four issues:

1. whether the trial court's order sufficiently stated the court's findings of fact and conclusions of law, as required by Arizona law; if not,

2. whether the trial court's failure to do so in an injunction order is reversible error;

3. whether the failure denied Harmon meaningful review on the merits regarding the validity of nominating petitions; and

4. whether upholding the lower court's order would deny Harmon his due process rights under Arizona law.

## DISCUSSION

**A. Were the trial court's findings of fact sufficient to satisfy Arizona law?**

**1. *The findings of fact requirement***

■ Rule 52(a) of the Arizona Rules of Civil Procedure expressly requires that

[i]n all actions tried upon the facts without a jury ..., the court, if requested before trial, shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. In granting or refusing preliminary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

Also, Rule 65(h) *requires* that "[e]very order granting an injunction ... shall set forth the reasons for its issuance and shall be specific in terms." Well-settled Arizona case law supports the findings of fact requirement. *See Amfac Elec. Supply Co. v. Rainer Constr. Co.*, 123 Ariz. 413, 414, 600 P.2d 26, 27 (1979); *Keystone Copper Min. Co. v. Miller*, 63 Ariz. 544, 553, 164 P.2d 603, 608 (1945); *Elliott v. Elliott*, 165 Ariz. 128, 134, 796 P.2d 930, 936 (Ct.App.1990); *Miller v. McAlister*, 151 Ariz. 435, 437, 728 P.2d 654, 656 (Ct.App.1986) (specifically holding that the trial court must make findings of fact if the remedy sought is a preliminary injunction).

Requiring a trial court to state separately findings of fact and conclusions of law accomplishes several goals. First, a defeated party may more easily determine whether the case presents issues for appellate review. *See Rogge v. Weaver*, 368 P.2d 810, 814 n. 7 (Alaska 1962). Second, findings and conclusions clarify what has been decided and thus provide guidance in applying the doctrines of estoppel and res judicata. *Wattleton v. International Bhd. of Boiler Makers*, 686 F.2d 586, 591 (7th Cir.1982), *cert. denied*, 459 U.S. 1208, 103 S.Ct. 1199–1200, 75 L.Ed.2d 442 (1983). Third, the requirement prompts judges to consider issues more carefully because "they are required to state not only the end result of their inquiry, but the process by which they reached it." *United States v. Merz*, 376 U.S. 192, 199, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964).

Finally, and most important, findings and conclusions permit an appellate court to examine more closely the basis on which the trial court relied in reaching the ultimate judgment. *City of Phoenix v. Consolidated Water Co.*, 101 Ariz. 43, 45, 415 P.2d 866, 868 (1966); *Bastian v. King*, 661 P.2d 953, 957 (Utah 1983) ("Proper findings are essential to enable [the appellate court] to perform its function of assuring that the findings support the judgment and that the evidence supports the findings."). *See generally* 5A James W. Moore & Jo D. Lucas, MOORE'S FEDERAL PRACTICE ¶ 52.06[1] (2d ed. 1992).

### 2. Sufficiency of the findings

■ With these principles in mind, we must determine whether this trial court fulfilled its legal duty. A trial court's findings of fact satisfy Arizona law if they are "pertinent to the issues and comprehensive enough to provide a basis for the decision." *Gilliland v. Rodriquez*, 77 Ariz. 163, 167, 268 P.2d 334, 337 (1954); *see also Post v. Industrial Comm'n*, 160 Ariz. 4, 7, 770 P.2d 308, 311 (1989).

Findings of fact satisfy this requirement if they are sufficiently specific to allow an appellate court "to test the validity of the judgment." *Gilliland*, 77 Ariz. at 167, 268 P.2d at 337; *see Elliott*, 165 Ariz. at 131, 796 P.2d at 933; *Post*, 160 Ariz. at 7, 770 P.2d at 311; *Ellingson v. Fuller*, 20 Ariz. App. 456, 460, 513 P.2d 1339, 1343 (1973). An appellate court must be able to discern more than a *permissible* interpretation of the trial court's analysis. *Urban Dev. Co. v. Dekreon*, 526 P.2d 325, 328 (Alaska 1974); *cf. Post*, 160 Ariz. at 7, 770 P.2d at 311. The reviewing court needs a sufficient factual basis that explains *how* the trial court actually arrived at its conclusion. *Post*, 160 Ariz. at 7, 770 P.2d at 311; *Dekreon*, 526 P.2d at 328. Without this explanation, "an appellate court cannot effectively review the decision-making process of the trial court." *Dekreon*, 526 P.2d at 328; *see also Post*, 160 Ariz. at 7, 770 P.2d at 311.

■ The findings of fact in this case do not approach the requirement that they be specific enough to allow us to test the validity of the judgment or its basis. *See Gilliland*, 77 Ariz. at 167, 268 P.2d at 337; *Elliott*, 165 Ariz. at 131–32, 796 P.2d at 933–34. In effect, the trial court stated

merely that it found signatures invalid as a result of one, some, or all of the reasons alleged by Miller. It tells us only that at least 568 signatures failed one legal requirement or another. It does not tell us which signatures failed to comply with which requirement, let alone why or how. Of course, the trial court need not set forth all evidentiary facts established during the proceedings. *See Jones v. Teilborg*, 151 Ariz. 240, 247–48, 727 P.2d 18, 25–26 (Ct. App.1986).

To satisfy Rule 52(a), the "findings must encompass all of the 'ultimate' facts—that is, those necessary to resolve the disputed issues." *Elliott*, 165 Ariz. at 132, 796 P.2d at 934. With regard to findings, "ultimate facts" are *at least* "the essential and determinative facts on which the conclusion was reached. They are the controlling facts, without which the court cannot correctly apply the law" in resolving the disputed issues in the case. *Star Realty Co. v. Sellers*, 73 N.M. 207, 208–09, 387 P.2d 319, 320 (1963); *see Elliott*, 165 Ariz. at 134, 796 P.2d at 936.

In the present case, the trial court omitted the ultimate or key facts that would allow us to determine whether the legal conclusion that Harmon filed an insufficient number of signatures is sound. That we might be able to construct a plausible interpretation of the trial court's reasoning does not sufficiently satisfy the trial court's burden. *See Gilliland*, 77 Ariz. at 168, 268 P.2d at 338; *Dekreon*, 526 P.2d at 328. The trial court effectively made no findings of fact at all. Instead, it simply reached and articulated the ultimate legal conclusion that a given number of signatures were invalid. In effect, the trial court presents us with two conclusions of law, labelling the first as a finding of fact. Without particular facts that inform us why certain signatures are invalid, this court cannot tell whether the trial court correctly applied the law. The rule requires more than a simple conclusory statement. The trial court must state which signatures fail to comply with which legal requirements and for what reason. We conclude, therefore, that the trial court's findings of fact fail to comply with Rule 52(a).

## B. The appropriate remedy

 Generally, on reviewing a lower court's decision, this court can: (1) affirm; (2) reverse; (3) modify the judgment; or (4) remand the action to the trial court for some specified action, including a new trial. A.R.S. § 12–2103. When the trial court has failed to comply with Rule 52(a), we must tailor the proper remedy to each case. *Miller*, 151 Ariz. at 437, 728 P.2d at 656.

Where possible, when a trial court in a non-jury case fails to make or makes insufficient findings of fact and conclusions of law, a reviewing court should remand the case to the trial court for further findings. *Id.; Consolidated Water Co.*, 101 Ariz. at 48, 415 P.2d at 871 (agreeing but affirming the judgment); *Kazal v. Kazal*, 98 Ariz. 173, 178–79, 402 P.2d 1001, 1005 (1965). In this case, we previously granted Miller's motion to remand for findings. Miller was attempting to protect her judgment, but the trial judge inexplicably failed to make further findings.

Although an appellate court will ordinarily remand for further findings, it may also decide an appeal without those findings if it is in a position to do so. *Davis v. United States*, 422 F.2d 1139, 1142 (5th Cir.1970) (compliance with this rule is not a jurisdictional requirement for appeal; an appellate court may decide the merits of an appeal in the absence of findings in the rare case that does not turn on contested facts and the court can fully understand the issues raised without findings); *see also* 9 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2577 (1971); 5A MOORE'S FEDERAL PRACTICE ¶ 52.06[2].

The trial court's failure to make the required findings may be reversible error. *Mandraes v. Hungerford*, 127 Ariz. 585, 587, 623 P.2d 15, 17 (1981). In *Mandraes*, a county party chair challenged the sufficiency of the nominating petitions of a candidate for the office of county recorder. *Id.* at 586, 623 P.2d at 16. The trial court granted the injunction requested but failed to make findings of facts and conclusions

of law. *Id.* at 587, 623 P.2d at 17. We held that this constituted reversible error. *Id.*

■ In this case, final decision without findings was impossible without transforming this court into a factfinder resolving disputed issues of fact. *See Davis,* 422 F.2d at 1142. Therefore, we reversed the trial court's order barring Harmon from the ballot. Two principles justify reversing the trial court instead of remanding: (1) the prejudice to Harmon's substantive rights, and (2) the fundamental nature of elections.

### 1. *The trial court's error prejudiced Harmon's substantive rights*

The trial court's order effectively ended Harmon's candidacy by enjoining the Board from printing Harmon's name on the primary ballot. Further, the trial court's failure to make findings of fact, either initially or on remand, precluded any meaningful review of the grant of the injunction, effectively depriving Harmon of his right of appeal. The time for the trial court to consider the issue had long since passed. *See* A.R.S. § 16–351(A). The trial court made its original order at the statutory deadline on July 13. It decided on July 27 not to amend its original judgment. The Board had to print, verify, and disseminate the sample ballots and the actual ballots for the September primary election. The tight time frame of the impending primary election precluded our ability to remand a second time to order adequate findings of fact. Nor would we have had time to review such findings after a second remand.[1]

### 2. *The fundamental nature of elections provides additional incentive not to inhibit access to the ballot*

The right to participate in our republican form of government constitutes the essence of American democracy. *See Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964) ("No right is more precious in a free country."); *State v. Miller,* 100 Ariz. 288, 296, 413 P.2d 757, 763 (1966) ("The right to engage in political activities ... is a privilege of citizenship which can only be denied by express language of a statute."). In Arizona, a candidate's access to the printed ballot involves several interrelated fundamental rights of democracy of both the voter and the candidate. *See* John D. Leshy, *The Making of the Arizona Constitution,* 20 ARIZ.ST.L.J. 1, 59–70 (1988).

In this case, Harmon gathered and filed more than the minimum number of signatures within the statutory time limit. *See* A.R.S. §§ 16–314(A) and 16–311. With neither adequate findings nor a transcript, we presume that his "circulated, signed and filed" petitions are valid. *Board of Supervisors of Maricopa County v. Superior Court,* 103 Ariz. 502, 504, 446 P.2d 231, 233 (1968).

### DISPOSITION

Absent sufficient findings of fact, we cannot determine whether Harmon fulfilled the statutory signature requirement in this case. Nor do we attempt to do so. Given the insufficiency of the trial court's findings of fact, the inability to order further remand, the consequent destruction of Harmon's right of appeal, and the importance

---

1. Part of the delay in this case results from the fact that a judge was called in from another county to sit on the case. This may often be necessary, but the judge seems not to have been prepared to meet the statutory deadlines. The judge failed to ask counsel to submit proposed findings at the beginning of the trial and did not make the findings—except those quoted—until the last day allowed by law. These problems were exacerbated by the vacation schedules of court staff, including the court reporter, who left without preparing a transcript of testimony. The lack of a transcript, of course, destroyed

any chance that this court might have been able to affirm, notwithstanding the insufficient findings of fact.

In election years all courts must expect contests and challenges to nominating petitions and candidates' qualifications. Therefore, presiding judges should ensure that judges and staff will be available for the prompt hearing and decision-making required by the statutes. The more quickly and efficiently these matters are handled in the trial court, the more likely this court will be able to make a prompt and judicious decision on appeal.

of the Arizona right to be a candidate, the only rational remedy available was to reverse and allow Harmon's name on the primary ballot. By now, the voters have settled the issue of whether Harmon should serve on the school board.[2]

2. Dr. Jack Harmon was elected and took office as Pinal County Superintendent of Schools on January 1, 1993.

JAMES MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.