21 P.3d 855

**DOUGLAS AUTO & EQUIPMENT, Petitioner Employer,**

**State Compensation Fund, Petitioner Insurer,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Carlos Zazueta, Respondent Employee.**

No. 2 CA–IC 00–0053.

Court of Appeals of Arizona, Division 2, Department B.

April 24, 2001.

38

State Compensation Fund by James F. Crane and Robert A. Schuler, Tucson, Attorneys for Petitioners Employer and Insurer.

The Industrial Commission of Arizona by Anita R. Valainis, Phoenix, Attorney for Respondent.

Les Gilbertson, Tucson, Attorney for Respondent Employee.

## OPINION

DRUKE, Judge.

¶1 Respondent Carlos Zazueta waited six days to report a knee injury that he had sustained while working for petitioner Douglas Auto & Equipment. Petitioner State Compensation Fund denied Zazueta's claim for workers' compensation benefits, asserting that he had not forthwith reported the injury as required by A.R.S. § 23-908(D). The administrative law judge (ALJ) excused the delay pursuant to § 23-908(E) and awarded Zazueta temporary benefits. Petitioners requested administrative review, arguing that the ALJ had not made a finding on whether they had been prejudiced by the delay and that the award thus did not comply with *Post v. Industrial Commission*, 160 Ariz. 4, 770 P.2d 308 (1989). The ALJ then amended the award by making an additional finding that "the totality of the evidence established that [petitioners were] not prejudiced by the [six-]day delay" and affirmed the award. This statutory special action followed.

¶2 Petitioners maintain that the ALJ's no-prejudice finding does not meet the requirements of *Post* and ask us to set aside

the award. Zazueta counters that the finding was based on the ALJ's review of all the evidence and that, therefore, the award satisfies *Post*. Because the issue of whether an award complies with *Post* presents a question of law for our determination, we review the issue de novo. *Benafield v. Industrial Comm'n*, 193 Ariz. 531, 975 P.2d 121 (App. 1998) (reviewing court determines questions of law de novo).

¶3 To aid our determination, we first examine the award in *Post*. As our supreme court observed there, the award quoted "some testimony," cited "general principles of workers' compensation law," and "simply set forth the ultimate legal conclusion ... that the evidence failed to establish the new, additional, or undiscovered condition necessary for reopening Post's claim." *Post*, 160 Ariz. at 5, 770 P.2d at 309. Because the award told it "nothing as to what the [ALJ had] found factually or concluded legally," the court held that it was "so lacking in specificity that [the court could not] review it" and set the award aside. *Id.* at 8–9, 770 P.2d at 312–13. In addition, the court admonished ALJs to "explicitly state their resolution of conflicting evidence on material and important issues, find the ultimate facts, and set forth their application of law to those facts." *Id.* at 8, 770 P.2d at 312.

¶4 Thirty years before *Post*, the supreme court expressed the same sentiment in *Wammack v. Industrial Commission*, 83 Ariz. 321, 320 P.2d 950 (1958). There, one of the award's findings merely stated that "full consideration" had been given to the factors set forth in A.R.S. § 23–1044(D) for determining a loss of earning capacity and "to all of the facts and circumstances pertaining to the case." *Wammack*, 83 Ariz. at 325, 320 P.2d at 953. The court held that this finding did not indicate "what matters were given consideration in arriving at reduced earning capacity" and "how they influenced the ultimate award." As a result, the court adopted the following rule for an administrative agency's findings: They must be sufficiently "explicit to enable the reviewing court to review the decision intelligently and to ascertain whether the facts as found afford a reasonable basis for the decision or be sufficiently

definite and certain to permit of judicial interpretation." *Id.; see also Cohn v. Industrial Comm'n*, 178 Ariz. 395, 874 P.2d 315 (1994) (absent explicit findings, reviewing court cannot assume issue was considered); *Hatfield v. Industrial Comm'n*, 89 Ariz. 285, 361 P.2d 544 (1961) (award set aside if findings lack precision and are too indefinite to aid reviewing court).

¶5 The rule adopted in *Wammack* and reiterated in *Post* is not unusual and has had diverse applications. The supreme court applied the rule, for example, in the election case of *Miller v. Board of Supervisors*, 175 Ariz. 296, 855 P.2d 1357 (1993), in which the trial court ruled that the candidate had collected insufficient signatures on his nominating petitions to place his name on the ballot. The court found that "at least 568 signatures [were] not valid as a result of unqualified circulators, (illegible) signatures, invalid addresses, persons living out of the precinct and duplication in signing other petitions." *Id.* at 298, 855 P.2d at 1359. Relying on *Post, Gilliland v. Rodriquez*, 77 Ariz. 163, 268 P.2d 334 (1954), *Elliott v. Elliott*, 165 Ariz. 128, 796 P.2d 930 (App.1990), and *Urban Development Co. v. Dekreon*, 526 P.2d 325 (Alaska 1974), the supreme court determined that the trial court's findings did

> not approach the requirement that they be specific enough to allow us to test the validity of the judgment or its basis. In effect, the trial court stated merely that it found signatures invalid as a result of one, some, or all of the reasons alleged by [the candidate]. It tells us only that at least 568 signatures failed one legal requirement or another. It does not tell us which signatures failed to comply with which requirement, let alone why or how.

*Miller*, 175 Ariz. at 299–300, 855 P.2d at 1360–61 (citations omitted). As a result, the supreme court reversed the trial court's order barring the candidate from the ballot.

¶6 Division One of this court also applied the same rule in *Division of Occupational Safety & Health v. Chuck Westenburg Concrete Contractors, Inc.*, 193 Ariz. 260, 972 P.2d 244 (1998), in which a review board's order had reversed an ALJ's decision that a subcontractor had violated three safety reg-

ulations. The board had based its order on a determination that the contractor was not responsible for the failed system that had caused a worker's death. On appeal, the court noted that, although the record included "500 pages of hearing transcripts and 150 pages of deposition testimony," the board's order "contained no findings of fact or resolution of the conflicting evidence[,] . . . contained no citations of law and did not specifically mention any of the three [safety] citations . . . or the legal issues associated with each citation." *Id.* at ¶ 38, 972 P.2d at ¶ 38. In accordance with *Post*, the court concluded that the board's order was "legally insufficient" and set it aside. *Id.* at ¶ 39, 972 P.2d at ¶ 39.

¶ 7 The same rule was previously applied in *Shelby School v. Arizona State Board of Education,* 192 Ariz. 156, 962 P.2d 230 (App. 1998), a case involving the denial of a school charter by the Arizona State Board of Education. The board's decision denying the charter had stated that it was made " 'in consideration of the record of this and all previous proceedings, including all materials and documents filed by the applicant.' " *Id.* at ¶ 18, 962 P.2d at ¶ 18. This court found the decision legally deficient under *Post* and *Hatfield* because the board had "failed to make basic findings of fact or conclusions of law and simply provided a conclusory statement as the basis for its decision." *Shelby School,* 192 Ariz. 156, ¶ 22, 962 P.2d 230, ¶ 22. The court observed that the rule requiring "findings and conclusions is no formality," noting that it "protects against careless or arbitrary action, facilitates judicial review, keeps agencies within their jurisdiction, aids parties' preparation of cases for rehearing and judicial review, and prevents judicial usurpation of administrative action." *Id.* at ¶ 24, 962 P.2d at ¶ 24. Our supreme court has expressed similar reasons for the rule: It allows parties to "more easily determine whether the case presents issues for appellate review," "prompts judges to consider issues more carefully," and permits "an appellate court to examine more closely the basis on which the [judge] relied in reaching the ultimate judgment." *Miller,* 175 Ariz. at 299, 855 P.2d at 1360.

¶ 8 The rule does not require that the findings "set forth all evidentiary facts established during the proceedings," *id.* at 300, 855 P.2d at 1361, or be in "any particular form, nor even great detail." *Post,* 160 Ariz. at 8, 770 P.2d at 312. But the findings cannot simply state that "the evidence failed to establish" the claim, *id.* at 5, 770 P.2d at 309, that "full consideration [was given] to all of the facts and circumstances pertaining to the case," *Wammack,* 83 Ariz. at 325, 320 P.2d at 953, or that the decision was made " 'in consideration of the record of this and all previous proceedings.' " *Shelby School,* 192 Ariz. 156, ¶ 18, 962 P.2d 230, ¶ 18. To be sufficient, the findings must include the basic facts "upon which the ultimate finding rests," *id.* at ¶ 21, 962 P.2d at ¶ 21, that is, " 'the essential and determinative facts on which the conclusion was reached.' " *Miller,* 175 Ariz. at 300, 855 P.2d at 1361, *quoting Star Realty Co. v. Sellers,* 73 N.M. 207, 387 P.2d 319, 320 (1963).

¶ 9 Accordingly, the findings must resolve any material conflicts in the testimony or evidence, *Post,* and dispose of the disputed matters or issues relevant to the proceedings, such as causation, *Hatfield;* requisites for reopening, *Post;* loss of earning capacity, *Wammack;* and credibility. *Adams v. Industrial Comm'n,* 147 Ariz. 418, 710 P.2d 1073 (App.1985). In addition, when a disputed issue requires consideration of multiple factors, such as the factors for determining a claimant's loss of earning capacity, *Wammack,* or the claimant's status as an employee or independent contractor under the right-to-control test, *see Growers Co. v. Industrial Commission,* 173 Ariz. 309, 842 P.2d 1322 (App.1992), the findings must specifically address each of those factors, the relevant evidence presented on them, and how they affect the disposition of the disputed issue. *Wammack; Growers; Elliott.* In short, "we must know how the judge reached his or her conclusion." *Post,* 160 Ariz. at 9, 770 P.2d at 313.

¶ 10 The issue here, then, is whether we can determine from the ALJ's findings how she concluded that petitioners were not prejudiced by the six-day reporting delay. Prejudice in this context involves the consid-

eration of two factors: aggravation of the claimant's injury resulting from "the employer's inability to provide early diagnosis and treatment" and hindrance to the employer's investigation and preparation of the case by the delay. *Magma Copper Co. v. Industrial Comm'n,* 139 Ariz. 38, 43, 676 P.2d 1096, 1101 (1983). In this case, however, the ALJ did not specifically address either factor. She simply made, as noted above, a general, conclusory finding that "the totality of the evidence established that [petitioners were] not prejudiced by the [six-]day delay." This is insufficient. *See Post; Wammack; Shelby School.* As a result, we are "unable to perform the type of judicial review that workers' compensation cases require." *Post,* 160 Ariz. at 8, 770 P.2d at 312. Accordingly, we must set aside the award.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, JOSEPH W. HOWARD, Presiding Judge.