NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

WILLIAM W. CUTTER, *Petitioner/Appellant*,

*v.*

CAMILLA MARIE CUTTER, *Respondent/Appellee*.

No. 1 CA-CV 12-0686
FILED 2-27-2014

Appeal from the Superior Court in Maricopa County
No. FC 2008-001945
The Honorable Michael R. McVey, Judge (Retired)

**AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART**

COUNSEL

Ryan Rapp & Underwood, P.L.C., Phoenix
By Christopher T. Rapp, Polly S. Rapp
*Co-Counsel for Petitioner/Appellant*

Warner, Angle, Hallam, Jackson & Formanek, P.L.C., Phoenix
By Charles R. Hallam, Tracey Ann Van Wickler
*Co-Counsel for Petitioner/Appellant*

Cavanagh Law Firm, Phoenix
By Philip C. Gerard, William F. Begley
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Michael J. Brown joined.

---

**D O W N I E,** Judge:

**¶1**        William W. Cutter ("Husband") challenges certain orders of the superior court in this dissolution proceeding. For the following reasons, we affirm in part, vacate in part, and remand in part.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Husband and Camilla Marie Cutter ("Wife") were married in 1988. Husband filed for divorce in 2008. After a multi-day bench trial, the court issued an unsigned minute entry ruling dissolving the parties' marriage and resolving various contested issues. The court ordered Husband to lodge a decree consistent with the ruling, which he did ("Original Decree").

**¶3**        Before the Original Decree was signed, Wife filed a motion to amend or clarify the court's ruling. Husband filed a Motion to Amend Findings and Motion for New Trial, asserting, *inter alia*, that the court had issued inadequate findings of fact and conclusions of law. Wife responded in opposition and noted that although "neither party made a formal request for findings pursuant to Rule 82(A)," both had "submitted proposed findings, and amended those findings before the final argument." *See* Ariz. R. Fam. L.P. 82(A). Wife asked the court to make additional findings, which she set forth in her response.

**¶4**        The court denied Husband's motion and Wife's request for additional findings and signed the Original Decree. Husband thereafter filed a Motion to Amend Decree and Motion for New Trial. He explained that he had submitted proposed findings of fact and conclusions of law before trial and had later submitted amended proposals based on the court's oral instructions during trial. Wife responded in opposition and contemporaneously lodged an Amended Decree that largely mirrored the Original Decree, though it corrected certain errors that the court had since corrected.

**¶5**         The court denied Husband's motion and signed the Amended Decree.  The court later ordered Husband to pay Wife's attorneys' fees in the sum of $115,802.01, plus interest.

**¶6**         Husband timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) and (A)(5)(a).

## DISCUSSION

**¶7**         Husband challenges: (1) the characterization of certain Cutter Holding Company ("CHC")[1] stock as community property; (2) valuation of the CHC stock and the corresponding effect on a court-ordered equalization payment; (3) the spousal maintenance award; and (4) the attorneys' fees award in favor of Wife.  More globally, Husband also contends that the court failed to render adequate findings of fact and conclusions of law.

## I.    Applicability of Rule 82

**¶8**         A threshold question is whether the parties triggered the superior court's duty to issue findings of fact and conclusions of law. Arizona Rule of Family Law Procedure ("Rule") 82(A) states that the court, "if requested before trial, shall find the facts specially and state separately its conclusions of law thereon."

**¶9**         On April 17, 2009, the court issued a "Trial Setting Order," stating, *inter alia*, that "any party filing a request for findings of fact and conclusions of law pursuant to Rule 82, Arizona Rules of Family Law Procedure, shall submit proposed findings of fact and conclusions of law to this Division no later than 20 days prior to trial."  Thirteen days before trial, Wife filed her proposed findings of fact and conclusions of law.  Ten days before trial, Husband submitted his own proposed findings and conclusions "pursuant to the Court's Minute Entry dated April 17, 2009." During trial, counsel and the court discussed the fact that both parties had submitted proposed findings of fact and conclusions of law prior to trial. The court directed counsel to "take what you've already filed [and] amend them to what you think conforms to the evidence."  Both parties complied by filing amended proposed findings of fact and conclusions of law.

---

[1]      Cutter Flying Services became Cutter Holding Company in 1997. For consistency's sake, we refer to the entity throughout this decision as "CHC."

¶10　　　　　The parties' filings were sufficient to trigger the superior court's duty to "find the facts specially and state separately its conclusions of law thereon." Ariz. R. Fam. L.P. 82(A). We recognize that neither party filed a stand-alone request for findings of fact and conclusions of law and that they filed their initial proposed findings a few days after the deadline stated in the trial-setting order. The submissions were, however, filed within the timeframe set by Rule 82. The court's comments during trial gave no hint that the pretrial filings would later be deemed insufficient. And Husband clearly satisfied his duty to alert the court to perceived deficiencies in its findings and conclusions before appealing. *See Elliott v. Elliott*, 165 Ariz. 128, 134, 796 P.2d 930, 936 (App. 1990) (parties must object to inadequate findings and conclusions before appealing to afford the trial court a cure opportunity).

¶11　　　　　Wife essentially conceded that the court's minute entry ruling was insufficient and asked the superior court to resolve Husband's objections by adopting additional findings of fact that she set forth in her response. Additionally, before the Amended Decree was entered, Wife filed a "Motion for Additional Findings of Fact, Conclusions of Law, and Amended Decree." She referenced her earlier request that the court "add additional findings in support of its ruling," and sought specific additional findings and conclusions, stating:

> Though this Court's June 7, 2010 ruling and orders made numerous ultimate findings, the additional findings previously requested by Wife should be added to the Decree in order to bring this lengthy and [contentious] litigation to an end after Husband's promised appeal. Certainly this Court understands that the ultimate findings are in fact supported by the additional findings of fact requested by Wife, and the ability to point to those findings by the trial court, as opposed to referencing various portions of the trial transcript, will facilitate the Court of Appeals' review of the trial court's resolution of the issues.

¶12　　　　　Having determined that the superior court was required to issue findings of fact and conclusions of law, we discuss certain deficiencies in that regard *infra*. When a request for findings of fact and conclusions of law has been made, an appellate court will not examine the evidence of record and "infer that the trial court has made the additional findings necessary to sustain its judgment." *Elliott*, 165 Ariz. at 135, 796

P.2d at 937 (analyzing the analogous Rule 52 of the Arizona Rules of Civil Procedure).[2]  In considering the adequacy of the findings, we are guided by the principle that they "must encompass all of the 'ultimate' facts—that is, those necessary to resolve the disputed issues in the case."  *Id.* at 132, 796 P.2d at 934.  As our supreme court has explained:

> An appellate court must be able to discern more than a *permissible* interpretation of the trial court's analysis.  The reviewing court needs a sufficient factual basis that explains *how* the trial court actually arrived at its conclusion.  Without this explanation, "an appellate court cannot effectively review the decision-making process of the trial court."

*Miller v. Bd. of Supervisors*, 175 Ariz. 296, 299, 855 P.2d 1357, 1360 (1993) (citations omitted).  *Elliott* is even more specific in addressing the need for findings of fact in support of monetary awards that are stated as mathematical figures:

> When the issue of child support or spousal maintenance is resolved, the result is a mathematical figure that represents the amount of the award.  As we explained in *Reed v. Reed*, 154 Ariz. 101, 740 P.2d 963 (App.1987), such a figure does not inform an appellate court of the basis for the trial court's decision.  Consequently, it does not enable an appellate court to conduct the type of review that Rule 52(a) requires.

165 Ariz. at 132, 796 P.2d at 934.

## II.    Characterization of CHC Stock

**¶13**         The court ruled that Husband owned 108 shares of CHC stock prior to marriage and that he received an additional 29 shares during the marriage as a gift from his father.  The court awarded those shares to Husband as his sole and separate property, and they are not at issue on appeal.  The court also concluded that 156.9 shares of CHC stock were community property.  It awarded those shares to Husband, with an offsetting equalization payment to Wife.  Husband contends that 30.59 of

---

[2]        Rule 82 of the Rules of Family Law Procedure is based on Rule 52 of the Arizona Rules of Civil Procedure, *see* Rule 82 cmt., so cases arising under Rule 52 are instructive.

the shares deemed community property were in fact his sole and separate property because they were purchased with his sole and separate funds.

¶14        "Property acquired by either spouse during marriage is presumed to be community property, and the spouse seeking to overcome the presumption has the burden of establishing a separate character of the property by clear and convincing evidence." *Brebaugh v. Deane*, 211 Ariz. 95, 97-98, ¶ 6, 118 P.3d 43, 45-46 (App. 2005). Clear and convincing evidence "indicates that 'the thing to be proved is highly probable or reasonably certain'" and "places a heavier burden upon one party to prove its case to a reasonable certainty." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25, 110 P.3d 1013, 1018-19 (2005).

¶15        The 30.59 shares at issue are part of an April 30, 2002 transaction whereby Husband purchased 35.75 shares of CHC stock from his father ("2002 Shares"). Husband signed a promissory note ("2002 Note") that consolidated the purchase price for the 2002 Shares ($493,430.34) with a pre-existing promissory note owing to his father in the sum of $333,767.90.

¶16        Husband retained Gary Freed of Clifton Gunderson, LLP, ("CG") to trace the funding sources for the 2002 Shares. Freed opined that community funds purchased between 3.76 and 5.16 of the 2002 Shares and that the remaining 2002 Shares (30.59) were purchased with Husband's sole and separate funds. According to Freed, the Bank of America 1365, Charles Schwab 3156, and JP Morgan 8931 accounts were Husband's sole and separate property when the relevant payments were made from those accounts.

¶17        Freed's opinions were challenged on cross-examination. Freed conceded that his conclusions were affected by Husband's characterization of the accounts as "separate." Freed also admitted that his calculations regarding the distribution of "community" and "[sole and] separate" portions were based on the full amount of the 2002 Note, which combined the purchase price of the 2002 Shares with a pre-existing note. Freed conceded that reconstructing the flow of assets over 20 years was "very difficult." CG obtained only 14.9% of the documents it deemed necessary to definitively accomplish this task. The following colloquy at trial suggests that the superior court was concerned about inadequate financial documentation and potential comingling:

THE COURT: . . . you would agree with me that if there were missing statements then you couldn't eliminate the possibility of co-mingling?

[FREED]: I -- I guess -- I'm not sure, because there are times that you can look at an account and know what's in the account at the end of a period, see how those assets have been invested perennially, and then have a space, and then come back six months later and, say, go back to the internet and see how those assets would have -- you know, what kind of rate of return they would have earned, and you may be able to get there. And we've had to do that frequently.

THE COURT: Okay.

[FREED]: It's -- you know, unfortunately, it's not a perfect year, and a 20-year span is -- is very difficult.

¶18        We disagree with Husband's contention that no presumption of community property attached to the Schwab and JP Morgan accounts because "Wife offered no specific evidence that the . . . accounts contained anything other than Husband's sole and separate property." Freed did not testify that these accounts were established before the parties' marriage (as he did regarding other accounts), and the records he relied on for the Schwab and JP Morgan accounts were all generated during the marriage. As such, those accounts are entitled to the presumption of community property. *Brebaugh*, 211 Ariz. at 97-98, ¶ 6, 118 P.3d at 45-46. *Roden v. Roden*, 190 Ariz. 407, 949 P.2d 67 (App. 1997), upon which Husband relies, is distinguishable. The comingling issue in *Roden* related to a franchise that the husband owned prior to marriage. *Id.* at 410, 949 P.2d at 70.

¶19        The superior court stated without elaboration that 156.9 shares of CHC stock (which included the 30.59 shares in dispute) were community property. It made no findings of fact in support of this conclusory statement. The court may have concluded that Husband failed to rebut the presumption of community property that attached to the accounts used to purchase the 2002 Stock. But as noted *supra*, "[a]n appellate court must be able to discern more than a *permissible* interpretation of the trial court's analysis. The reviewing court needs a sufficient factual basis that explains *how* the trial court actually arrived at its conclusion." *Miller*, 175 Ariz. at 299, 855 P.2d at 1360 (citation omitted).

¶20 Because the superior court did not make adequate findings of fact in support of its conclusion that the community owned 156.9 shares of CHC stock, we vacate that determination and remand for additional findings of fact and, if appropriate, conclusions of law. *See id.* at 300, 855 P.2d at 1361 ("Where possible, when a trial court in a non-jury case fails to make or makes insufficient findings of fact and conclusions of law, a reviewing court should remand the case to the trial court for further findings.").

## III.    Valuation of CHC Stock

¶21 Before the parties' marriage, Husband, Kay Cutter (Husband's sister), and other family members owned stock in CHC. In 2007, Kay Cutter sold her 39% interest (229.15 shares) for $9 million to two non-family members ("Minority Shareholders"). The Minority Shareholders and Husband had differing visions for the company. In 2008, CHC agreed to redeem the Minority Shareholders' shares for $11 million, or $48,003.49 per share. The redemption transaction closed on October 1, 2008.

¶22 Husband asked CG to determine the fair market value of one share of CHC stock on a non-marketable, minority interest basis, as of August 31, 2009. CG set that value at $24,304.49. Wife's expert reviewed CG's report and disagreed with certain findings and calculations. Wife's expert opined that the value of one share of CHC stock as of August 31, 2009, was $52,229.83.

¶23 The superior court stated simply that it "value[d] this stock at $48,003.29 per share." The court did not explain the basis for its finding, which did not coincide with either expert's view. We might presume that the court believed the redemption sale in 2008 was the most reliable indicator of fair market value. But as noted *supra*, when findings of fact are requested, "it is not enough that the appellate court is able to derive bases on which the trial court could have permissibly reached the decision it did from the record. It must be clear how the court actually did arrive at its conclusions." *Elliott*, 165 Ariz. at 135, 796 P.2d at 937.

¶24 The need for findings of fact is particularly acute here, where the selected valuation date has critical implications. Evidence of record discloses changes in CHC's financial status after the 2008 redemption transaction, as well as a global economic downturn of considerable magnitude. Although a trial court has "wide discretion" in choosing a valuation date, *Sample v. Sample*, 152 Ariz. 239, 242-43, 731 P.2d 604, 607-08

(App. 1986), where findings of fact and conclusions of law are required, an appellate court must be able to discern how and why the trial court chose a particular valuation figure, which includes selection of an appropriate valuation date. *Cf. Murphy v. Murphy*, 46 A.3d 1093, 1097-98 (D.C. 2012) (finding error in trial court's failure to consider current valuation of marital home following housing slump); *McDiarmid v. McDiarmid*, 649 A.2d 810, 812-13 (D.C. 1994) (finding abuse of discretion in trial court's refusal to revalue marital assets after specific proffer that passage of time resulted in substantial fluctuations in value); *Sutliff v. Sutliff*, 543 A.2d 534, 537 (Pa. 1988) (affirming a remand order because trial court used the date of the parties' separation as valuation date and did not consider fluctuations occurring between that date and date marital assets were distributed).

¶25　　　　Because we cannot ascertain the basis for the superior court's $48,003.29 per share figure, we vacate that determination and remand for entry of findings of fact that permit meaningful appellate review.

## IV.　Equalization Payment

¶26　　　　Having vacated the findings regarding the community share of CHC stock, as well as the valuation of that stock, we must also vacate the amount of the court-ordered equalization payment to Wife. In large part, that payment was based on Wife's share of the community's interest in the CHC stock at the stated value.

## V.　Spousal Maintenance

¶27　　　　The Amended Decree awards spousal maintenance to Wife as follows:

> **IT IS ORDERED** that commencing January 1, 2010, Husband shall pay spousal maintenance to Wife in the amount of **$15,000 per month**. . . . However, at such time as Husband makes each of his property equalization payments in the amount of $542,287, Husband's spousal maintenance obligation shall be reduced by $2,000 per month, commencing on the first day of the month following each such payment.

¶28  Husband contests Wife's eligibility for spousal maintenance. He also challenges the amount and duration of the award and, once again, contends the superior court's findings of fact are inadequate.

¶29  As Husband's counsel essentially conceded at oral argument before this Court, the contention that Wife is ineligible for an award of spousal maintenance has been waived. In his written closing argument in the superior court, Husband did not argue that Wife was ineligible for spousal maintenance; he instead asked the court to award her $2000 per month for four years. Husband's motion for new trial similarly challenged only the *amount* of the spousal maintenance award and did not assert that Wife was ineligible in the first instance. *See Cullum v. Cullum,* 215 Ariz. 352, 355 n.5, ¶ 14, 160 P.3d 231, 234 n.5 (App. 2007) (As a general rule, a party cannot argue on appeal legal issues not preserved below.).

¶30  In explaining the amount of the spousal maintenance award, the superior court addressed several of the statutory factors set forth in A.R.S. § 25-319(B), stating:

> This was a marriage of almost 20 years before the Petition for Dissolution of Marriage was filed. These parties enjoyed an exceptionally high standard of living. Husband is 52 years old. He is the president of Cutter Aviation Company. Wife is a 45 year old homemaker. Each party enjoys good health.
>
> Husband's Affidavit of Financial Information reveals that from tax year 2006 through tax year 2008, his gross income averaged $2,774,837 per year. In his Supplemental Affidavit of Financial Information filed in March 2010, Husband claimed that his gross annual income for 2009 was $323,983. This is a drastic drop in his gross income. This claimed drop was not supported by a federal income tax return, although in fairness to husband, the income tax return was not due for another month at the time he filed his Supplemental Affidavit of Financial Information.
>
> As noted above, Wife has not worked outside the family home since the parties started a family in 1992. At most, Wife is capable of earning $24,000 per year. At present, Wife has reasonable monthly living expenses of at least $11,000 per month. This excludes amounts necessary to support the parties' minor children.

According to Husband, the court made inadequate (and incorrect) findings of fact about the parties' respective incomes, awarded an amount of maintenance unsupported by the record or the findings, and erred by making the award indefinite.

### A. Husband's Income

¶31 Husband contends that the court should have set his annual income at $323,983. He also challenges the use of one income figure for spousal maintenance ($2,774,837) and a different figure ($323,983) for child support purposes.

¶32 The court's findings reveal skepticism about the "drastic drop" in gross income that Husband was asserting. The court was entitled to (and apparently did) discredit the notion that $323,983 was an accurate income figure for Husband. But in light of the request for findings of fact, the court was required to offer *some* explanation for choosing the $2,774,837 figure. *See Elliott*, 165 Ariz. at 132, 796 P.2d at 934 (A mathematical figure "does not inform an appellate court of the basis for the trial court's decision."). This is particularly so given Husband's evidence that he received sizeable distributions from CHC for the sole purpose of paying taxes attributable to the company.

¶33 We also cannot discern the basis for the court's use of two significantly different income figures for Husband when setting spousal maintenance versus calculating child support. Wife offers plausible explanations, but we have no way of knowing whether her suppositions are correct. When a request for findings of fact has been made, the court must "address all of the factors with respect to which the parties presented evidence" and "set forth the mathematical basis of the spousal maintenance award." *Elliott*, 165 Ariz. at 132, 796 P.2d at 934. The court failed to do so here.

¶34 We vacate the superior court's determination of Husband's income and remand for additional findings of fact relevant to that issue.

### B. Wife's Income

¶35 The findings of fact regarding Wife's earning capacity comport with the opinion of a career consultant hired by Husband, who testified that Wife could obtain employment paying between $19,000 and $25,000 per year. However, the court did not discuss the income Wife receives from her sole and separate interest in Beechwood Manor, LLC,

and Beechwood, Inc. (collectively, "Beechwood"). Tax statements reflect distributions to Wife from Beechwood averaging $1187 per month from 2005 to 2007. According to Wife, those figures are incorrect. Her affidavit of financial information states that she receives an average of $334 per month from these entities. And Wife testified at trial that "going forward," she may receive $8000 to $10,000 per year from Beechwood. The superior court did not mention Wife's income from Beechwood. Even if it accepted her trial testimony as true, those amounts must be part of the income calculus.

¶36          The court also failed to address whether Wife will receive income from community property apportioned to her in the dissolution proceedings. *See* A.R.S. § 25-319(B)(9) (directing courts to consider marital property apportioned to a spouse in setting spousal maintenance); *see also Elliott*, 165 Ariz. at 132, 796 P.2d at 934 (remanding because court failed to address all relevant factors under 25-319(B) or to "set forth the mathematical basis of the spousal maintenance award"); *Reed v. Reed*, 154 Ariz. 101, 106, 740 P.2d 963, 968 (App. 1987) (holding that trial court's "limited, generalized determinations" of financial matters were inadequate and noting that it "failed to set forth even the most rudimentary arithmetic basis for the particular monthly increase it ordered petitioner to pay").

¶37          Because the findings regarding Wife's income are inadequate, we vacate the superior court's determination of her income and remand for additional findings of fact.

### C.          Amount and Duration of Award

¶38          The superior court found that Wife "has reasonable monthly living expenses of at least $11,000 per month. This excludes amounts necessary to support the parties' minor children." Without further explanation, it awarded her spousal maintenance of $15,000 per month and ordered Husband to pay child support, 100% of the children's private school tuition, and one-half of their extracurricular activities.

¶39          We cannot discern why the court ordered $4000 per month more than Wife's living expenses, while at the same time ordering Husband to pay significant sums for the children's support. Additional

factual findings are necessary to support the amount of the spousal maintenance award.[3]

¶40        Husband also contends that the court erred by making the award indefinite.  Unlike other provisions of the Amended Decree, the superior court made findings of fact relevant to the duration issue, stating:

> This was a marriage of almost 20 years before the Petition for Dissolution of Marriage was filed.  These parties enjoyed an exceptionally high standard of living.  Husband is 52 years old.  He is the president of Cutter Aviation Company. Wife is a 45 year old homemaker.  Each party enjoys good health.

The court also discussed Wife's limited employment prospects and fashioned the award such that Husband's obligation decreases over time if he makes the court-ordered equalization payments.

¶41        We find no substantial deficiencies in these findings of fact. If we were not vacating significant underpinnings of the spousal maintenance award (e.g., determination of the parties' incomes), we would leave the court-ordered duration intact.  On remand, though, findings about the parties' respective financial positions may affect findings relevant to the duration of the award.  For that reason, we vacate the indefinite award of spousal maintenance, without prejudice to the court's ability to reinstate it if the findings of fact on remand support it.[4]

## VI.        Attorneys' Fees

¶42        In the Amended Decree, the court awarded Wife 40% of the fees she had incurred through completion of trial on April 8, 2010, but stated that "Husband shall be credited with any amounts previously paid

---

[3]        The court also failed to make findings regarding Husband's ability to meet his own financial needs while meeting Wife's financial needs.  *See* A.R.S. § 25-319(B)(4).

[4]        Our remand order is primarily aimed at obtaining adequate findings of fact regarding the substantive issues discussed *supra*.  But the superior court, in its discretion, may also conduct further hearings or direct the parties to submit proposed findings or additional memoranda on remand.

toward Wife's attorney's fees." The court denied Wife's request for an award of expert witness fees.

**¶43** Wife ultimately sought 40% of $289,505.03, or $115,802.01.[5] Husband filed a rather cursory objection, stating that Wife had "already used as much as $240,000 of community funds" for fees and requesting an evidentiary hearing. He did not ask the court to "make specific findings concerning the portions of any award of fees and expenses that are based on consideration of . . . reasonableness of positions." *See* A.R.S. § 25-324(A). The court declined to set a hearing and ordered Husband to pay $115,802.01 of Wife's fees.

**¶44** On appeal, Husband argues that Wife's fee request was "barred by laches" and that the superior court abused its discretion by awarding fees without holding a hearing.

**¶45** We decline to consider Husband's laches argument. He did not make such a claim in the superior court and has therefore waived it for purposes of appeal. *See Cullum,* 215 Ariz. at 355 n.5, ¶ 14, 160 P.3d at 234 n.5 (rejecting legal arguments raised for the first time on appeal).

**¶46** Nor was the court required to set an evidentiary hearing. Rule 78(D)(3) addresses claims for attorneys' fees in family court proceedings and states that "a hearing *may* be granted in the discretion of the court." (Emphasis added.) Based on the substance of Husband's objection, the superior court did not abuse its discretion by declining to set a hearing. Husband did not state the purpose of the proposed evidentiary hearing. He voiced no objection to any specific time entries or dollar amounts and made only generalized claims that Wife had already used community funds for fees and had "taken unreasonable positions throughout this proceeding."

**¶47** We affirm the attorneys' fees award in favor of Wife.

**CONCLUSION**

**¶48** For the foregoing reasons, we affirm in part, vacate in part, and remand to the superior court for further proceedings. Both parties

---

5 The $289,505.03 amount included:
   - Wife's original attorneys' fees request ($163,447.03);
   - Fees detailed in the supplemental application ($58,212.50);
   - Fees incurred from February 28 through April 8, 2010 ($67,845.50).

have requested an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 25-324. In the exercise of our discretion, we decline both requests. We also decline to award appellate costs to either party. Each was partially successful on appeal, and no party has clearly prevailed.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : mjt